[PHILADELPHIA, APRIL 29TH, 1839.]

## MAN *against* WARNER and Another.

The statute of limitations is a bar to an action on a promissory note, given by a testator in his lifetime, but not due until after his death, if no suit is brought against his executors until more than six years have elapsed after the debt became due; and this notwithstanding provisions in the will for the payment of all debts, and for carrying on the testator's business after his death.

Writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action brought by Daniel Man, against Joseph Warner and Redwood Fisher, executors of the will of Benjamin Warner, deceased.

The action was assumpsit on six promissory notes, drawn by the testator in favour of Joshua and Thomas Gilpin, and by them endorsed in blank, viz.

| One note dated | 25th of 8th mo. 1821, at 2 mo's. for | $457 10 |
| " " " | 13th of 7th " 5 | 806 10 |
| " " " | 18th of 9th " 3 | 430 00 |
| " " " | 18th of 9th " 3 | 510 00 |
| " " " | 23d of 7th " 5 | 650 00 |
| " " " | 16th of 8th " 6 | 802 12 |

All which notes fell due after the decease of the testator, and were protested for non-payment.

(Man *v.* Warner.)

The defendants pleaded non-assumpsit and the statute of limitations. The plaintiff replied to the last plea as follows:

" And the said plaintiff, as to the plea of the statute of limitations above pleaded, saith, That he, by reason of any thing by the said defendants, in their said plea of the statute of limitations alleged, ought not to be barred from maintaining his aforesaid action against the said defendants, because he saith, that Benjamin Warner, the testator died, viz. on the 24th day of September, 1821, which was between the time of the making and delivering of the said notes, and the time of their falling due, having previously made his last will and testament, in the words and figures following, viz.

'Be it remembered, that I, Benjamin Warner, of the city of Philadelphia, bookseller, being of sound mind, memory, and understanding, do hereby make my last will and testament, in manner following, that is to say—

First—I will that all my just debts and funeral expenses shall be duly paid and satisfied, for which and other purposes hereinafter declared, I do hereby nominate and appoint my brother Joseph Warner, and my brother-in-law Redwood Fisher, executors of this my last will and testament.

Item—I give and bequeath to my beloved wife Lydia, one annuity or yearly sum of two thousand five hundred dollars, commencing from the day of my decease, and to be paid to her out of any moneys of my estate in quarterly payments, for and during all the term of her natural life. Moreover, I give to her, my said wife, all my household goods, kitchen furniture, horses, carriages, plate and all other articles and things purchased for family use.

Item—I give and devise unto my said brother, my interest in the Cherry Hill estate, to hold to him for and during all the term of his natural life. The mortgages on that property, I direct shall be paid by my estate.

Item—I do hereby authorise my executors, to purchase any real estate which I hold as security for any debt or debts, for the purpose of securing such debts, and to take the conveyances for the same in their own names, and to sell, rent, or convey the same whenever they may see fit, for the benefit of my estate. And I do hereby authorise my said executors, or the survivor of them, to make any disposition they may think best of my brewery at Cincinnati, in the state of Ohio, and the land belonging to the same, either to continue the business there, or to exchange the said estate for other property, or for any securities, and to sell, dispose and convey the premises taken in exchange.

Item—I do hereby authorise and empower my said executors to sell and dispose of all my real estate, whenever they may see fit, at and for the best price that can be reasonably obtained for the same,

(Man *v.* Warner.)

and upon receipt of the purchase-money or security therefor, by good and sufficient deeds, conveyances and assurances in the law, to grant and convey the same unto the purchaser or purchasers thereof, his, her or their heirs and assigns, in fee; and until such sales, that the same shall be and remain in the management of my said executors. And it is my desire that my said executors shall collect in all my outstanding debts, as soon as the same can be conviently done, and from thence, and from the moneys arising from my real estate, and from any other sources of my estate, that they pay and satisfy the debts due and owing by me; and until such payments can be made, that they in their capacity as my executors, may give or endorse any note or notes from time to time, in renewal of notes given or endorsed by me, until the debts due thereon shall be fully paid and satisfied; which notes so to be given or endorsed by my said executors, or the survivor of them, shall be as fully binding on my estate, as those originally given by myself. And forasmuch as a precipitate sale of my stock in trade would be highly disadvantageous to my estate, and being satisfied that my business might be carried on to advantage, I do therefore authorise and empower my said executors, and the survivor of them, either by themselves, or by persons by them to be engaged for that purpose, to carry on and continue my business, at the risk and for the benefit of my estate, so long as they may see fit, upon the same plan as I have conducted the same, which will appear from my books of account, to the end and with a view that any or either of my sons, in the sole discretion of my said executors, or the survivor of them, may succeed to the business, and take the establishment on his or their arriving at the age of twenty-one years, on such terms and conditions as my said executors may see fit.

And it is my mind and will that so long as my executors, or the survivor of them, shall continue to carry on the said business, that the store and premises now occupied by me in High street, shall and may be held and occupied for that purpose.

Item—I direct my executors that the moneys which shall come to their hands from the debt due to me by my brother-in-law Redwood Fisher, shall be applied by them, immediately on receipt thereof, one-third part thereof in the purchase from the Life Insurance Company, a sum of money, payable to his son William R. Fisher, if and when he shall arrive at the age of twenty-five years; another third in the purchase from the same company of a sum payable to his son Samuel G. Fisher, if and when he shall arrive at the age of twenty-five years; and the remaining third thereof, in the purchase from the said company of a sum to be paid to his son Miers Fisher, if and when he shall arrive at the age of twenty-five years.

And all the rest, residue and remainder of all my estate, whatsoever and wheresoever, I give, devise, and bequeath unto all my chil-

(Man *v*. Warner.)

dren, their heirs, executors, administrators and assigns, to be equally divided between them, part and share alike, when they respectively shall arrive at full age.   And I do hereby nominate and appoint my said wife, and my said brother Joseph, and my said brother-in-law Redwood Fisher, guardians of the persons and estate of my said children.   Provided always, that whatever I have hereinbefore given to my said wife, is in lieu and full satisfaction of her dower and thirds of and in my estate.   Lastly, I do hereby revoke all wills and testaments, by me at any time heretofore made and published, and declare this only to be and contain my last will and testament."

And that the defendants took upon themselves the burthen and execution of the said will, and sold and disposed of all the real estate of the said decedent, and from the time of the decease of the decedent until such sales, possessed themselves of the said real estate, and managed the same ; and that the said executors carried on and continued the business of the said decedent, and so have carried on and continued the business of the said decedent, from the time of the decease of said decedent, down to the suing out of the writ, and this he is ready to verify.   Whereupon he prays judgment and his damages as aforesaid," &c.

To this replication the defendants demurred specially, setting forth as causes of demurrer, " that the same is double ; that there are two several replications : that the same is argumentative, uncertain, and departs from the declaration ; and also that the same is in other respects uncertain, informal and insufficient," &c.

The District Court, after argument, rendered judgment on the demurrer for the defendants.   The opinion of that Court, which was delivered by STROUD, J., was as follows :

" Where a testator gives real or personal estate, or both, in trust for the payment of his debts, the statute of limitations is no bar in equity against creditors, whose claims are in force at the testator's death, and who seek to avail themselves of the benefit of the trust. This was decided by Lord REDESDALE, in reference to a devise of real estate ; *Fergus* v. *Gore*, (1 *Sch. & Lef.* 107 ;) and by Lord ELDON in *Hughes* v. *Wynne*, (1 *Turn. & Russell*, 307, 1 *Chitt. Eq. Dig.* 663 ;) and by Lord BROUGHAM, where the bequest was restricted to *personal* estate, *Jones* v. *Scott*, (1 *Russ. & Mylne*, 255, 4 *Eng. Chan. Reps.* 413) ; and in *Rendell* v. *Carpenter*, (2 *Younge & Jarvis*, 484 ; 1 *Chitty Eq. Dig.* [663]) a similar decision was made in regard to a trust comprising both real and personal property.

Trusts of this description fall within the rule of Chancellor KENT in *Kane* v. *Bloodgood*, (7 *Johns. C. R.* 111, 114,) recognised in *Wisner* v. *Barnet*, (4 *Wash. C. C. R.* 639-40.) *Murray* v. *Coster*, (20 *Johns. Rep.* 585.)   *App* v. *Driesback*, (2 *Rawle*, 287,) and *Maclay* v. *Lyons*, (1 *Watts*, 275.)   They are direct between trustee and *cestui que*

(Man v. Warner.)

*trust,* the executors being trustees for creditors, and each creditor a *cestui que trust,* with all the rights incident to this relation. *Jones* v. *Scott,* (4 *Eng. Chan. Rep.* 420, 422 ;) *Hannum* v. *Spear,* (1 *Yeates,* 567,) per SHIPPEN, J. Such trusts are also of exclusive equity jurisdiction where the departments of law and equity are exercised by separate tribunals.

If, therefore, we possessed a Court of Chancery, and the plaintiff had preferred his claim there, no obstacle would exist to his recovery. And this brings us at once, to the only point for examination; whether our Courts, which to prevent a failure of justice give effect to equity jurisprudence, whenever it can be done without a violation of the essential forms of common law proceedings, will adopt the equity doctrine which excludes the operation of the statute of limitations on the facts of this case.

The debts of decedents are a lien on all the real and personal estate of which they die seised and possessed. Yet even in regard to real estate, it has been held that a sale made by executors under a power to sell for the payment of debts, divests the lien of creditors; the proceeds of the sale being substituted for the land itself, and distributed by the executors according to the legal priority and dignity of the debts. *Hannum* v. *Spear,* (1 *Yeates,* 553.) Now, while in one aspect this decision seems to impart a sanction to such a trust beyond what a rigid construction of the general doctrine of liens would authorise, yet I apprehend the fund thus derived would differ in no respect from the proceeds of the like estate in case of an intestacy, and a sale effected under an order of the Orphans' Court. It would be considered merely in the light of assets to be brought into the general account of the executor, in common with the moneys arising from the personal estate of the testator, whether the latter were embraced in the same trust or not. If so, what reason can be assigned for making a distinction in respect to the operation of the statute of limitations, between different portions of the same common assets ? None was suggested in the argument, nor does any occur to my mind. The Court has always been open to the plaintiff since the maturity of the notes, upon which he has brought suit. He could in this way have arrested the course of the executors in relation to sales of the real estate, provided these had not happened before he had issued execution, or, if they had been made previously, a settlement of accounts by the executors might have been compelled, the advantages of which could have been reaped by the creditor, disembarrassed of the provisions of the trust designed for the benefit of the testator's family. To deny what is here asked, is a denial of no mode of redress essential to the plaintiff's rights. He has been remiss in the pursuit of these by the plain, ordinary and efficient means within the period of time granted for this purpose by the laws of the land.

If the position already stated be a correct one,—that recourse is

(Man *v.* Warner.)

to be had to equity principles in no case except to prevent a failure of justice, the rejection of the plaintiff's claim would necessarily follow. And the doctrine on this subject has certainly been propounded with this limitation on several occasions by high authority. Thus in *Dorrow* v. *Kelly*, (1 *Dall.* 144,) the Court would not suffer a simple contract debt to be tacked to a mortgage, saying, " the Courts of law have in some instances adopted the chancery rules to prevent the absolute failure of justice; but in this case there is no necessity to usurp the powers of a Court of Chancery." So in *Stansbury* v. *Marks*, (4 *Dall.* 130,) the language is, " from necessity, the Courts of Law in Pennsylvania adopt the principles of the English Court of Chancery." So the decision that a lost bond may be declared on without a profert is expressly based on the absolute necessity of the practice, to prevent a failure of justice. *Respublica* v. *Coates*, (1 *Yeates*, 23.) Indeed, in nearly all the important cases in which resort has been had to equity rules, the principle of necessity is asserted or implied. See *Pollard* v. *Schaffer*, (1 *Dall.* 211.) *Lang* v. *Keppele*, (1 *Binney*, 123.)   *Steinhauer* v. *Witman*, (1 *Serg. & Rawle*, 438.)   *Jordan* v. *Cooper*, (3 *Serg. & Rawle*, 578.)   *Pidcock* v. *Bye*, (3 *Rawle*, 183.)   *Martzell* v. *Stouffer*, (3 *Pennsylvania Reports*, 398.) .

The cases in which the application of chancery principles has been refused, impart additional strength to the general argument for resisting the present attempt. Our Courts have never listened to an application to extract evidence from a party to a suit by means of a bill of discovery, however convenient this may be in the administration of justice; nor have they ever entertained a bill for the specific execution of contracts in the direct mode pursued by Courts of equity. The tacking of subsequent to prior mortgages, is denied with us. So a sequestration of tolls was considered beyond the competency of our judicial powers, although it was admitted that no other remedy existed to compel the corporation to pay its just debts, and that a sequestration was not only just in itself, but consistent with the proceedings in equity tribunals. *Ammant* v. *New Alexandria Turnpike Company*, (13 *Serg. & Rawle*, 210. 213.) The interposition of a third person in the nature of a bill of interpleader, as a party to a subsisting action when the proceedings are in personam, is, at least, as a general rule, foreign to our practice: see *Burnside* v. *Miskelly*, (5 *Watts*, 508.) In most of these instances legislative provisions, though to a very limited extent, have been made—a strong proof that the general power was regarded as not existing in the Courts, and not requisite in an unrestricted form.

*Johnston* v. *Humphreys*, (14 *Serg. & Rawle*, 394,) and certain *dicta* found in that case, and in *Power* v. *Hollman*, (2 *Watts*, 221,) stand, it is supposed, in opposition to these views.

The syllabus of the former case is thus given by the reporter: " If money be received as a deposit for a special purpose, and the

(Man v. Warner.)

party who receives it, instead of applying it to that purpose, uses it, he cannot set up the act of limitations as a bar to a recovery by the party entitled to it." There are some expressions in the opinion of the Court which may seem to warrant this deduction, but the facts of the case do not require the establishment of so broad a position in order to justify the judgment of the Court. It is stated, however, in the same opinion, that " it has been decided that an administrator, being a trustee, cannot set up the act of limitations in bar to the next of kin, or persons entitled to the distribution of the assets." And in the latter case, it is apparently concluded on a similar ground, that claims of creditors upon the estate assigned for their benefit by an insolvent debtor, are equally protected from the statute. One remark applies to the matters decided, asserted, or conceded in these cases, which distinguishes them from the case at bar, namely, they cannot affect the rights of third persons.

If, on the other hand, the doctrine in question is applicable to the present parties, the interest of legatees and distributees will be constantly jeoparded, and the risks and losses of their sureties most inconveniently and injuriously augmented. It is unnecessary to enter upon any detail of the provisions of the laws relating to executors and administrators, to corroborate this conclusion. They are familiar to every one.

It is unnecessary to extend this inquiry further. Favourable as I am to the incorporation of equity jurisprudence with common law proceedings, as far as it may be advantageously done, yet this, in my opinion, ought never to take place except from necessity—should be jealously excluded whenever it would injuriously affect the rights of third persons, or disturb essentially the harmony of the general system of laws we are called upon to administer."

The plaintiff took a writ of error from the judgment of the District Court.

Mr. Wheeler, for the plaintiff in error.

It was said by the learned judge, who delivered the opinion of the District Court in this case, that if we possessed a Court of Chancery, and the plaintiff had preferred his claim there, no obstacle would exist to his recovery. This is believed to be entirely correct, and if so, the only question is, must the plaintiff fail for want of a remedy? If our case is a trust, we are entitled to a remedy in Pennsylvania: for it is decided law in Pennsylvania, that the Statute of Limitations does not apply to a trust. Thompson v. M'Gaw, (2 Watts, 161.) This was an action for a legacy, by Wm. M'Gaw, against Alexander Thompson, executor of Samuel M'Gaw. The will, under which the legacy was claimed, was proved in 1814; the executor settled his administration account in 1816, on which there was found a balance in his hands of one thousand five hundred and twenty-four

(Man *v.* Warner.)

dollars. This suit was brought to November Term, 1832. The. pleas were *nil debet* and *non assumpsit infra sex annos.* The opinion of the Court was delivered by SERGEANT, J. It was against the allowance of the statute. His honor says at p. 163, "Chancery has refused to adopt the rule by analogy to the statute, because an executor stands in the situation of a trustee; and whilst the trust subsists, the statute has not been permitted to run between the trustee and *cestui que trust,* in cases of real or personal estate. This reason applies as forcibly in a Court of law, as of equity, depending not on the forum or the form of proceeding, but on the nature of the case, and the relation of the parties." There is another class of cases to which the action on the case has been applied, to the disregard of the statute. Thus in *Patterson* v. *Nichols,* (6 *Watts,* 379,) it is decided that the statute is not a bar to the recovery of a distributive share of personal estate to which the plaintiff is entitled under the intestate law. The opinion of the Court was delivered by KENNEDY, J. "The first error assigned, presents the question whether the statute of limitations is a bar to the recovery of a distributive share of the personal estate of an intestate when six years from the time when the distributee might first have demanded the same from the administrators of the intestate, have run before the institution of the action. The decision of this Court, and the principles laid down in *Thompson* v. *M'Gaw,* (2 *Watts,* 161,) and recognised again in *Dobler* v. *Snaveley,* (5 *Watts,* 225,) settle this question." Then at page 361, his honor says, "Again, it has been held, that the statute does not apply or extend to cases of express trusts, *Walker* v. *Walker,* (16 *Serg. & Rawle,* 379,) which, from their very nature, cannot be subject to limitation, as long as the trust is undischarged; and while the relation of trustee and *cestui que trust* continues to exist, their respective rights and positions are not adverse to, but perfectly consistent with each other, so that the policy which dictated and gave birth to the statute of limitations, would not seem to require the application of such a principle, in order to put an end to the claim of *cestui que trust.*" *Johnston* v. *Humphreys,* (14 *Serg. & Rawle,* 394,) is to be regarded as the undoubted law of Pennsylvania. It is fully sustained by *Lord Hollis's case, (Viner's Abr. Limitation,* 125.) In *Durden* v. *Gaskill,* (2 *Yeates,* 208,) a trust was enforced by an action of indebitatus assumpsit, in despite of the statute of limitations. The statute of limitations, therefore, does not apply to a trust in Pennsylvania. The test of Chancellor KENT, "exclusively cognizable in equity," is not, and cannot be applicable in our state. The Chancellor is somewhere represented as saying, "A party is barred in equity, whenever he could have brought his action at law, and neglected to do so, until the limitation of the statute intervened." Now in *M'Gaw* v. *Thompson,* 16 years—in *Patterson* v. *Nicholls,* 14 years—and in each of the other cases, more than six years had intervened from the cause of action accruing before the remedy by

(Man *v.* Warner.)

action on the case was resorted to. Now as to the question of there being a trust. We assert that there is a trust. We presume the adverse position to be thus. " That the law does not permit a testator to create a special trust of his personal estate, so as to withdraw it from the administration of his executor." *Jones* v. *Scott,* (4 *Eng. Chan. Reps.* 416.) Without admitting or denying this position, we say, that we will consider it as the adverse position. But the testator here, has done more. He has authorised his executors " to purchase any real estate which I may hold as security for any debt, for the purpose of securing such debts, and to take the conveyances for the same in their own names, and to sell, rent or convey the same wherever they may see fit, for the benefit of my estate. And I do hereby authorise my said executors, or the survivor of them, to make any disposition they may think best, of my brewery at Cincinnati, in the state of Ohio, and the land belonging to the same, either to continue the business there, or to exchange the said estate for other property or for any securities, and to sell, dispose and convey the premises taken in exchange." Then he authorises them to sell all his real estate, and that until such sales, the same shall be and remain in the management of his executors. He authorises his executors, in their capacity as executors, to give or endorse any note or notes from time to time, in renewal of notes given or endorsed by him, until the debts due thereon shall be fully paid and satisfied; " which notes so to be given, or endorsed by my said executors, or the survivor of them, shall be as fully binding on my estate, as those originally given by myself." " And forasmuch as a precipitate sale of my stock in trade would be highly disadvantageous to my estate, and being satisfied that my business might be carried on to advantage. I do therefore authorise and empower my said executors, and the survivor of them, either by themselves, or by persons to be engaged for that purpose, to carry on and continue my business, at the risk and for the benefit of my estate, as long as they may see fit, upon the same plan as I have conducted the same, which will appear from my books of account, to the end and with a view, that any or either of my sons, in the sole discretion of my said executors, or the survivor of them, may succeed to the business, and take the establishment, on his or their arriving at the age of twenty-one years, on such terms and conditions as my said executors may see fit. And it is my mind and will, that so long as my executors, or the survivor of them shall continue to carry on the said business, that the store and premises now occupied by me in High street, shall, and may be held and occupied for that purpose." After these extracts, it is unnecessary to say that there is something more pointed out by the executors to be done, than the ordinary administration of a decedent's estate. It is evident there are trusts. The next inquiry is, Did the executors assume the trust? I quote from the auditor's report, as before this Court, in 2 *Wharton's Rep.* p.

(Man *v.* Warner.)

295, and confirmed by this Court, in all respects, excepting all that in any way affects the claim of Daniel Man. " The testator," says the report, " died on the 24th of September, 1821, having first made his last will and testament, dated November 2nd, 1819, whereby he appointed the accountant and Redwood Fisher his executors, and authorised them, in their discretion, to continue his business so long as they might see fit, at the risk, and for the benefit of his estate, as will more fully appear by reference to the will. Under this power, and with the consent and approbation of some of the principal creditors, the executors carried on the business for several years." So much for the auditor's statement of the matter. If we look at the accounts, we find that the series of the executors' transactions began with a continuation of the decedent's business. They do not charge themselves with any inventory. They go right on,—selling stock, and buying to replace stock; paying rent for a place of business in Philadelphia; charging themselves with the profits from bookstores elsewhere, viz. one at Richmond, Virginia. The executors acted largely upon the trust, and, as may be collected from the accounts, during a period of thirteen years: the time of filing their last account was in 1835. As to the magnitude of operations, they charged, and are paid nineteen thousand three hundred and one dollars, as commissions. As to the character of the trust, we say that it is primarily and emphatically for the payment of debts. The trust to pay debts, accompanies, and in fact and in law, precedes the trust for the family. He begins, First, " I will that all my just debts and funeral expenses be duly paid and satisfied." Now as to the force of such a clause. In *Clifford* v. *Lewis*, (1 *Maddock & Geldart*,) [sometimes called 6 *Maddock*,] p. 38, the vice-Chancellor says, " In this case the testator begins his will thus: ' I will and direct that my just debts, funeral and testamentary expenses be paid and satisfied,' and he then proceeds to dispose of his real and personal estate. The question is, whether this expression with which he has commenced his will, imports a general and primary purpose that the payment of his debts, funeral and testamentary expenses, should precede the subsequent disposition which he has made of his property. In *Finch* v. *Hattersley*, the will began thus, ' First, I direct that my debts, &c. &c. be paid.' In *Lee* v. *Warrington*, ' Imprimis, I direct my debts to be paid.' Both these wills may be read thus; In the first place, I direct my debts. The testator has in fact, in the first place, directed his debts to be paid, and I cannot attribute to him a different intention, because in the form of the expression, he has not remarked that it was in the first place." In *Coates* v. *Muse*, (1 *Brockenbrough's Rep.* p. 547,) the clause for construction was thus. The words of the act of assembly, says C. J. MARSHALL, are, " The executors or administrators of a guardian, of a committee, or of any other person who shall have been chargeable with, or accountable for the estate of a ward, an idiot or a lunatic,

(Man v. Warner.)

or the estate of a dead person, committed to their testator or intestate, by a Court of record, shall pay so much as shall be due from their testator or intestate, to the ward, idiot or lunatic, or to the legatees or persons entitled to distribution, before any proper debt of their testator or intestate." ' " The question," proceeds the Chief Justice, " is whether the priority given by this section, extends to creditors, or is confined to the claims of the ward, idiot, &c., and legatees or distributees of the deceased. In the case of a ward, or of an idiot or lunatic, the question cannot well arise, and I am not sure that this circumstance may not in some degree affect the construction of the act, in its application to the case of legatees and distributees, who are thus connected in the same provision with the ward, and the idiot or lunatic. There are, however, some considerations which powerfully oppose this construction of the act. The executor or administrator holds the estate of his testator or intestate, as a trustee; first, for creditors, and then for legatees or distributees. This rule is so intermingled with all the principles of our law, its observance is so imperiously exacted by the most sacred injunctions of justice and morals, that the legislature cannot be supposed to impair it, unless the language be such, that the construction is inevitable. Express words only, can change the order which debts and legacies, or distributive shares hold to each other. The executor of an executor is often the executor of the first testator. The debt due from his immediate to his original testator, represents the property converted by that immediate testator to his own use, and is assets in his hands, first to satisfy the claim of the creditors of the first testator, and then the claims of legatees. In a contest between those creditors and legatees, all our experience, all our legal education, every thing we derive from observation or instruction, informs us that the creditors must prevail. In such a state of things, the priority of a legatee over a creditor of the last testator, is by an implication so necessary as to be inevitable, the priority of a creditor of the first testator, whose claim is so superior in dignity, to that of the legatee, as to enable him to wrest the property from the legatee, after it shall be delivered to him.    *    *    *    *    *    For these reasons, I think it impossible to resist the conviction, that this section gives a priority to debts due to the estate of a dead person, committed to the hands of the last decedent in his lifetime, over the proper debts of such decedent, but interferes no further with the subject." The marginal note of this case is at page 540, and it is thus, " Construction of the 60th section (Rev. Code, ch. 104,) of the act concerning executors, &c. B., the executor of A. commits a devastavit of the estate of his testator. C. the executor or administrator of B. is bound to pay the debts due to the estate of A. before any proper debts due to B.'s own creditors. Although the words of the section require the executor or administrator of the executor, &c. to pay what shall be due to legatees, or distributees of the

first decedent," &c.    The result is, that Benjamin Warner, in fact, and in law, must be considered as having established a trust for creditors primarily ; and so the executors understood him, and so the executors have acted under his will.    Our case, in many points, is analogous to *Peter* v. *Beverley*, (10 *Peters's Sup. Ct. Reps.* 557.) There the decedent established a trust for creditors and his family. A family was reared in pursuance of the trust.    There were notes in bank running at the time of the death, which were suffered to lie over.    After a long interval, greatly transcending the period of the statute of limitations, the note-holders sought to have that part of the trust in relation to creditors carried into execution.    The family who were in possession of the estate resisted ; urging the statute of limitations.    The Court in delivering judgment, as we understand them, thinking so little of the plea of the statute, as to overrule it with little ceremony, confined themselves principally, as to the mode of executing the trust.    We take the liberty to adopt the celebrated argument of the learned counsel, Mr. Sergeant, who argued for the note-holders, the Bank of the United States, so far as that argument has reference to the statute of limitations, as a part of our own.    But a trust is not necessary to bar the statute.    The case of *Jones* v. *Scott*, (4 *Eng. Chan. Rep.* 413,) was decided upon the broad ground of a direction—of intent.    There was not a particle of real estate to be affected by the will, though the testator had supposed otherwise : all his estate was personal property.    In *Jones* v. *Scott*, the statute had partially run at the time of the testator's death, and more than six years had passed after the testator's death, before relief was sought in chancery.    The facts were these : " The plaintiffs were creditors of Richard Donovan on the balance of a banking amount, which had been ascertained in 1815 ; the testator died in July, 1816.    In July, 1823, the plaintiffs commenced an action in the Common Pleas ; that action was met, on the part of the defendants, by a plea of the statute of limitations, and was shortly afterwards discontinued.    The plaintiffs then, in 1824, filed the present bill, on behalf of themselves and the other creditors of Richard Donovan, praying, among other things, that the trusts of his will for the payment of his debts, might be carried into execution under the decree of the Court.    The defendants, by their answer, insisted on the statute of limitations as a bar to the relief."    The Master of the Rolls (Sir JOHN LEACH,) said : " The law does not permit a testator to create a special trust of his personal estate, so as to withdraw it from the administration of his executors : whatever he may attempt to do in that respect, all claims must nevertheless be made against the executors; and trustees named in a will, can receive only the residue, after all demands on the personal estate are satisfied.    The debt of the plaintiff being, therefore, to be claimed against the executors, and not under the trust, is barred by the statute of limitations.    Dismiss the bill with costs."    The plaintiffs appealed from his honor's decree.    We give one or two extracts from the argument of the counsel for the appel-

(Man v. Warner.)

lants on the hearing, for the purpose of showing the course of it.
" The creation of a trust, or even of a charge upon freehold estate
for the payment of debts, prevents the statute from running against
any debts not barred at the time when the instrument speaks, that
is, at the death of the testator.　That point has been set at rest by
Lord ELDON's decision in *Hughes* v. *Wynne*, (1 *T. & R.* 307.) *Har-
greaves* v. *Michell*, (6 *Maddock*, 336,) and *Kendall* v. *Carpenter*, (2
*Y. & J.* 484.)　"What can it signify whether the property, devoted
by will to the pious purpose of saving the testator from sinning in
his grave, is or is not, by law applicable to that purpose."　The
Lord Chancellor at page 433, " The only question is, whether there
exists any difference between a charge upon the real and a charge
upon the personal estate.　I have given my reasons for thinking that
no such distinction can be maintained.　Now let us consider what
will be the effect of this construction in the case of wills containing
such a clause.　The consequence will be that a man's debts, if he
chooses so to charge them, upon his personal estate, provided they
be not barred at his decease, will be payable notwithstanding any
length of time that may afterwards elapse.　I know not that courts
of equity any more than courts of law, ought to lean against allow-
ing a man to make such declarations of his intention to have his
debts paid, &c.—Upon these grounds, I have found myself bound
to come to a decision contrary to that of his honor."　Decree reversed,
So much for the rule in England.　Its reasonableness, its justice, its
morality, must commend it to every mind.　It seems an outrage, to
forbid a dying debtor the privilege of stopping the statute.　We
speak of it as a privilege to the debtor to be allowed the satisfaction
of saying, and of saying with effect, to his executor, " Now as to my
creditors having claims in full life, you shall not defeat them by any
delay of yours."　We ask for the privilege to stop the statute,
whether the debtor knows how to create a trust, does create a trust,
or does not; we ask for the privilege without restriction.　It is the
law in New York.　*Roosevelt* v. *Mark*, (6 *Johnson's Chan. Rep.* 293,)
[*Anno.* 1822.]　*Rogers* v. *Rogers*, (3 *Wendell's Rep.* 518,) [*Anno.*
1829.]　So elsewhere, 3 *Hening & Munford*, 116.　It is the rule in
Pennsylvania, because there is no decision to the contrary.　In
*Smith* v. *Porter*, (in 1 *Binn.* 209, [in 1807,]) the rule is laid down as
it was subsequently arrived at by Sir THOMAS PLUMER in *Burke* v.
*Jones*, (in 2 *Ves. & Beame*, 275,) that debts barred are not revived
by such a clause.　In reference to *Smith* v. *Porter*, there is a want
of precision as to the facts.　But from what the Chief Justice says, it
is clear that the Court only decided the case of debts barred.　His
statement is at page 211 : ".The case comes before the Court on a
special verdict; and the single question is, whether a debt due on
account, and barred by the act of limitations, is revived by the fol-
lowing clause,—' I order and direct all my just debts and funeral
expenses to be paid.' "　At page 212, " The industry of the plain-

tiff's counsel has not produced a single case in which it has been decided, that a direction in a will, like the present, revives a debt barred by the statute." We therefore say that the rule in *Jones* v. *Scott* is the rule in Pennsylvania. It is peculiarly proper that it should be the rule in Pennsylvania, because creditors of even the most affluent estates would, notwithstanding the most positive directions of testators to the contrary, be liable to lose their debts at the caprice of executors. For instance, here is a creditor, who has suffered the decedent to use his money for five years, the debtor dies, declares in his will that the debt shall be paid, the executor has a year to settle the estate; at the end of which he opposes the statute, and the debt is lost. Again, every creditor who does not receive payment, must dishonour the decedent's estate by bringing suit, and bring upon himself the certain loss of counsel's fees for suit, and commissions for collecting. *Fritz* v. *Thomas*, (1 *Wharton's Rep.* 70,) decides that the personal representative of the deceased can produce no impression by his promise; it is a mere *nudum pactum.* Again, by rejecting the rule, the best and most popular of all clauses in wills is rendered entirely nugatory; a mere solemn mockery! So much for the general law in respect to this clause. But trust, charge, direction, is of no consequence; for if the statute does not begin to run in the lifetime, it does not run at all. The law is stated by Lord REDESDALE in *Fergus* v. *Lefroy*, (1 *Scho. & Lefroy*, 110 :) " The statute had not run before the death of the testator, and it never runs after against a debt which it had not run against before; or against which there is no presumption of payment in the life of the testator." The law as thus stated by Lord REDESDALE, was recognised by Sir THOMAS PLUMER in *Burke* v. *Jones*, (2 *Ves. & Beame*, 275,) and is not contradicted by any decision any where. In *Power* v. *Hollman*, (2 *Watts*, 221,) ROGERS, J. says, " By the assignment the estate passed to the trustees, and no delay or omission to settle, or account, or pay the debts, would operate as a bar to the claim of the creditors." The assignment there spoken of, was that of an insolvent. The assignment here is by the will. As to the position involved in the question, what reason can be assigned for making a distinction in respect to the operations of the statute of limitations, between different portions of the same common assets ? we answer, that in England where assets come in part from real estate, the executor is not allowed to plead the statute as against the personal assets, if the testator has directed the payment of his debts. The portion coming from real estate is mingled in the general aggregate. (1 *Ves. Jr.* 444.) " Where a testator combines real with personal estate generally, there is no doubt that all the burthens of the personal should be put upon this so combined with it." When the whole fund is addressed, the statute is denied as against the whole and every part. The real assets have uniformly been considered as coming in aid of the personal. So is every one of our

(Man v. Warner.)

cases; unless where all were personal, as in *Jones* v. *Scott.* The principle of stopping the statute is not dependent in England or in this country, on the source of the assets, but on the intention of the testator. No evils from existing law can be equal to those of sustaining a judgment not founded in law. It is presumable, that if they can be shown to the legislature, a new law will be made. We doubt, however, the policy of the legislature extending the statute of limitations to trustees, or to trusts of any kind, whether public or private. As to the effect of the Court's judgment in relation to third persons: The pleadings display the case fully; they show no other parties before the Court than the plaintiff, on the one side, and the executors as defendants, on the other side. The pleadings show the will of Mr. Warner and the fact of the notes falling due after his decease. It is also said that the Court has always been open to the plaintiff since the maturity of the notes, upon which he has brought suit, and that he could in this way have arrested the course of the executors in relation to the sales of real estate, provided these had not happened, before he had issued execution; or if they had been made previously, a settlement of accounts by the executors might have been compelled, the advantages of which would have been reaped by the creditor, disembarrassed of the provisions of the trust designed for the benefit of the testator's family. It is supposed that an earlier suit, pressed to judgment and execution might have benefitted the plaintiff. Such a course was not adopted. It might have broken up the operation of the trust which the executors were carrying on, with the expressed or implied consent of the plaintiff. Assuredly neither law nor equity, will permit the executors thus to entrap! Besides the breaking up of the trust might have been attended with an utter loss of the plaintiff's claim. We have shown, that the whole trust was primarily for the creditors. How much came from the management and sale of the real estate, and how much from carrying on the decedent's business, is not apparent. We say, that we do not ask for any unusual remedy, any remedy forced upon our courts by want of a court of chancery, as in the case of suing the executor and terre-tenant to recover a legacy charged upon land, as in *Brown* v. *Furer*, (4 *Serg. & Rawle*, 217;) or to preserve a trust from loss, as to the fund, as in *Martzell* v. *Stouffer*, (3 *Penn. Rep.* 398.) The testamentary power of Benjamin Warner to declare the trust is beyond doubt. A man may bind his executors to carry on a partnership. *Gratz* v. *Bayard*, (11 *Serg. & Rawle*, 47.) A testamentary power to carry on trade is not questioned in that case. *Toller on Executors*, 166, is direct. In England, our fullest remedy would be in chancery; there, the executor, if sued at law, would be estopped from denying assets, when created directly from the face of the will. As to *Kane* v. *Bloodgood*, (7 *John. C. R.* 40,) the decision as to the only matter which could admit of dispute was right. The learned Chancellor in deciding the case, rode down

much of his own reasoning, in the course of which he had combatted some of the English cases, but ultimately sustained them. The facts of the case, at the commencement of the report, and his decision at the close of it, show this. Thus, the learned chancellor, at page 135, says, " This view of the question in respect to No. 41, was not considered by me, upon the former discussion." Then at p. 361, " I shall overrule the plea of the statute, as to so much of the bill as relates to the dividends on share No. 41." In the xix. vol. *Jurist,* there is a full examination of· this case, title " Limitation of Actions." Our case is assuredly " a continuing subsisting trust." As to *Fergus* v. *Gore,* (1 *Sch. & Lefroy,*) Sir Thomas Plumer, in speaking of it, speaks in such a manner as to imply his accordance. The elementary books speak of it without deduction. *Blanchard on Limitations,* p. 72, 1 vol. *Law Library.* And Lord Chancellor Hart, in *Congreve* v. *Power,* (1 *Molley's Report,* 121,) says " it has never been impeached."

Mr. *Price* for the defendant in error.

The act of the 27th of March, 1813, declares that " *all* actions upon the case shall be sued or brought within six years." The act of limitations is favoured as a statute of protection and repose. " Some period for the limitation of actions is necessary for the peace of society." Tilghman, C. J. (1 *Binn.* 217.) " It is a wise and beneficial law, not designed merely to raise a presumption of payment of a just debt, from lapse of time, but to afford security against stale demands, after the true state of the transaction may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses. It has a manifest tendency to produce speedy settlements of accounts, and to suppress those prejudices which may rise up at a distance of time, and baffle every honest effort to counteract or overcome them." Judge Story, (1 *Peters's Rep.* 360.) " In the modern cases, the statute has been considered as entitled to some respect, and not to be explained away." Judge Rogers, (17 *Serg. & Rawle,* 127.) " An able English judge has said that the two best statutes in their books are the statute of frauds and the statute of limitations." Judge Smith, (1 *Pa. Rep.* 137.) " The case *Wistar's Exrs.* v. *Gray's Admrs.,* (5 *Binn.* 573,) and the decisions hereafter cited, led the way to a rational construction of cases under this law." (*ib.*) " I hold the act of limitations to be a most' beneficial law, and that it strongly tends to the peace and quiet of social life." Yeates, J. (5 *Binn.* 580.) There is no exception from the statute of executors, &c. It has never before been questioned that an executor might plead the statute. Many decisions of this Court take it for granted that he might. (1 *Binn.* 209. 5 *Binn.* 573. 15 *Serg. & Rawle,* 231. 2 *Watts,* 215. 1 *Wharton,* 66.) The only doubt has been, whether, in case of a deficiency of assets, (as here) the other

(Man v. Warner.)

creditors might not compel the executor to plead the statute, contrary to his own inclination. (*Ashmead's Rep.* 355.) Other statutory provisions show a legislative intent to protect the estates of decedents from stale claims. The creditor is to give notice of his claim to the executor, &c. within one year, and if " any creditor neglects to exhibit his account, and the assets are distributed before notice of his claim, his remedy against the administrator is gone forever." *Geo. Smith's Estate*, (*Ashmead*, 352.) The debts of a decedent by act of 4th April, 1797, ceased to be a lien on the real estate of a decedent after seven years; and this was held to be an act of limitations protecting heirs and devisees, as well as purchasers. (1 *Watts*, 9.) *Kerper* v. *Hock*, (6 *Watts*, 22, 32.). This period is reduced to five years by 24th sec. of act of 24th Feb. 1834. (*Purd.* 393.) Though real estate be turned into money, the creditor whose lien is gone by the lapse of five years, cannot be paid out of it. (6 *Watts*, 33.) The law intends that the estates of decedents shall be speedily settled up. The executor, &c. is to settle his account in one year. Sec. 15, act of 15th March, 1832. (*Purd.* 859.) Legacies become due and payable at the end of one year. Act 24 Feb. 1834, sec. 51. (*Purd.* 398.) The distributee is to give security. (*Purd.* 397.) Are sureties to remain indefinitely liable after the next of kin has spent his portion in the confidence that it belongs to him? It is well settled that it is in the discretion of the executor, &c. to plead the statute of limitations or otherwise. (*Ashmead*, 355; 4 *Bac. Ab.* 429; 1 *Eq. Ca. Abr.* 395; 11 *Vin.* 269; *Prec. in Ch.* 100; 1 *Binn.* 212; 1 *Wharton*, 71.) If he has the discretion, he has the right. The point is fully decided by this Court not only that the executor may plead the statute of limitations, but that he cannot waive it by an acknowledgment of the debt. *Fritz* v. *Thomas*, (1 *Wharton*, 66.) Even an executor *de son tort*, may plead the statute and have the benefit of it in equity. (10 *Ves.* 93.) The law intends even a greater protection to executors than others. Hence debt on simple contract against the executor does not lie, because he cannot wage his law as a testator could. (*Toller*, 461.) The will of Benjamin Warner does not distinguish this from the ordinary case. It creates no such direct trust between the executors and the creditors exclusively cognizable in chancery as to take this case out of the protection of the statute. There is no use of the term trust in the will, and the naked power given to the executors to sell the real estate, only effects what an order of the Orphans' Court would accomplish. When exercised, the land is in the same manner cleared of the liens of decedents' debts, and the proceeds become assets to be administered as other effects. (1 *Yeates*, 553, 565;) *Hannum* v. *Spear*, (2 *Dall.* 291.) The main purpose of the will was to continue the business for the benefit of the testator's family; not to do more for creditors than the law would have done. There is no intent apparent to take from the executors the power to protect the estate by the statute.

The willing that his just debts should be paid, effected no more than the law required. The statute may become a necessary protection against unjust debts, and may be so in this case, and of that the executor is, in his discretion, to judge. The will says exactly the contrary of desiring the payment of unjust debts, and the discretion of the executor is in no manner restrained, except by the strong implication that he is not to pay unjust debts. A testator's willing the payment of his just debts did not revive a debt barred by the statute. *Smith* v. *Porter*, 211, (1 *Binn.* 209.) " Whether the debts are just or not must be left to the judgment of the executor before he makes a voluntary payment; and if upon a candid examination he thinks a debt not justly due, it would be doing violence to the words of the testator so to construe them, as to deprive the executor of the legal means of defence of pleading the act of limitations." (*Ib.* 212.) *Smith* v. *Porter*, is strongly confirmed by *Burke* v. *Jones*, (2 *Ves. & B.* 275, 289,) relied on by the plaintiff, and there the importance of the protection of the statute to the executor is strenuously urged. " There was a time when an unaccountable prejudice existed, as to the act of the legislature limiting claims and time. The judges of this Court, some of whom preceded us, were among the first to restore this class of most beneficial, and actually necessary laws, to their place in the statute book and jurisprudence of our country. There was a time when, if a testator directed in his will that his executor should pay his debts, it revived debts long barred by the statute of limitation. This was decided twenty years ago not to be law in this state." Per HUSTON, J. (6 *Watts*, 25.) A testator as little suspects when he makes his lands liable to his debts, which he knows by law they are, that he thereby takes from his estate the protection of the statute of limitation. He adds nothing to the resources of the creditors, and he never means thereby to make those creditors who are not creditors, or to take from the executor a protection against those whom he believes not to be creditors. The plaintiff's claim, to be excepted from the statute, must be a direct and continuing trust, exclusively cognizable in equity. If not such, even in chancery, the statute is a bar. 2 *Scho. & Lefroy*, 630 ; 4 *Wash. C. C. R.* 639-40 ; 7 *Johns. Ch. Rep.* 90, 111 ; *Kane* v. *Bloodgood*, (2 *Rawle*, 302 ;) *App* v. *Driesbach*, (1 *Watts*, 271, 275 ;) *Lyon* v. *Maclay*. The decision of Judge JONES, (2 *Wharton*, 299,) is sound and conclusive on this point. " Where there is a concurrent jurisdiction in the courts of common law and of equity, the rule must be the same, and the statute must be pleaded with the same effect in the one Court as the other." (20 *Johns.* 585 ; 7 *Johns. Ch.* 118.) And in cases of equitable jurisdiction, chancery adopts the statute of limitation. (1 *Bald. R.* 419 ; 10 *Whea.* 149, 168 ; 3 *Peters*, 52, 53 ; 7 *John. Ch.* 113, 119, &c.) And the effect is the same as at law. (7 *John. Ch.* 122, 124.) Lord CAMDEN says, " As often as Parliament had limited the time of actions and remedies, to a certain period, in

(Man *v.* Warner.)

legal proceedings, the court of chancery adopted that rule, and applied it to similar cases in equity." (3 *Bro. Ch. C.* 640, note.) Lord REDESDALE says, (2 *Scho. & Lef.* 630,) "I think Courts of equity are bound to yield obedience to the statute of limitations upon all legal titles and legal demands, and cannot act contrary to the spirit of its provisions. I think the statute must be taken virtually to include Courts of equity." It is not, therefore conceded, that if we had a Court of chancery in Pennsylvania, the terms of the will would deprive the executor of the protection of the statute; because the exercise of the power of sale in the will would put the executor in possession of the effects, for no other purposes and no other liabilities than if realized by the ordinary process of the law of Pennsylvania, where lands are assets to pay a decedent's debts; and because equity would equally shield him, by giving effect to the statute; there being no express trust declared in the will, recognising the plaintiff as a *cestui que trust,* whose claim could be cognizable only in equity, but the plaintiff, at all times having his remedy at law, and the decedent's property always amenable to the plaintiff, under legal proceedings against the defendant. The proceeds of the land could in no way be separately reached to answer specifically as a trust fund to creditors, to come within those express and continuing trusts exclusively cognizable in chancery. The clause of the will relied upon, mixes the proceeds with the other assets: " And it is my desire that my said executors shall collect in all my outstanding debts, &c. and from these and the moneys arising from my real estate, and from any other sources of my estate, that they pay and satisfy the debts due and owing by me." It is not the case of a trust, but of a power, in substitution of the Orphans' Court power. The creditor has no additional resource provided for him than what the law furnishes. His remedies and resources for payment remain the same. There is nothing to affix on the lands any specific trusts, or to give to the creditor the relation of a *cestui que trust.* If the plaintiff recovers as to the proceeds of lands, he does also as to the personalty; yet it is only the lands that gave rise to the idea of a trust. The proceeds of real estate in the hands of an administrator, are not liable to a creditor if the lien given for five years to the debts of a decedent shall have expired. (6 *Watts,* 32.) The limitation therefore, is one year shorter in respect to the proceeds of real estate, than in respect to personalty; so that the power in this will does not strengthen the plaintiff's claim. It is a question whether the testator intended to take from his executors the power to plead the statute at their discretion, for the protection of his estate. In *Smith* v. *Porter,* the direction to pay his just debts, it was held afforded no evidence of an intention to deprive the executor of the power to plead the statute; and in *Burke* v. *Jones,* (2 *Ves. & B.* 389,) it was held that a devise in trust to pay debts, did not revive a debt barred; and the chancellor says, "it must depend upon that which alone can

subject a real estate to debts by simple contract, the intention." In this as in that case, the matter is, " to take the ordinary course ; his debts are to be discharged, but the investigation of them is left to the executor." The plain line is that the testator intends the Courts of law and equity to determine what are just debts, leaving his executor at liberty to use all means of resistance prescribed or allowed by law." " If a devise of this kind can have the effect contended, the statute would be a snare to those, who, relying on it, might after six years destroy their vouchers." The argument is stronger for the executor who may never have heard of the debts, and paid away all the assets. " A trust is where there is such a confidence between parties that no action at law will lie, but is merely a case for this (chancery) Court." (2 *Atk.* 610. 7 *Johns. Ch. R.* 118.) Even in equity, therefore, this case would not be excepted from the statute. But in Pennsylvania the remedy is exclusively at law, and the case directly within the terms of the statute; and the reason and policy of the act apply to the case of an executor with augmented force. In the Orphans' Court, proceeding on equity principles, a creditor can have no remedy, as has been decided in this case. (2 *Wharton,* 301.) The plaintiff's remedy, therefore, is exclusively at law ; and the Courts of law were open to him from the maturity of the notes. Where a statute is provided, the legislature require its directions to be strictly adhered to. Act 21 March, 1806, sec. 13. (*Purd.* 51.) Statute provisions are to be preferred to the common law ; and the principles of the common law to those of equity, which are only to be resorted to in case of necessity. Here is a double ground of preference for the statute over the equitable exception ; an exception to the rule of equity which adopts the statute, as well as the acts of assembly ; and only existing any where when the relation of the party is so intimate as that the title and possession of the one is that of the other, producing so constant an acknowledgment as to repel the statute. But this cannot be said of an unknown creditor, and the general administrator of the effects of a decedent. The legislature has signally evinced its jealously of all judicial evasions of its statutory provisions, even where the common law principles have been adhered to; but the objection would be still greater to the evasion of a beneficial statute, by an exception existing only in chancery, when chancery powers and practice have generally been the objects of legislative aversion in Pennsylvania. There is no necessity to afford a remedy, that the defendant should be deprived of his statutory protection : the plaintiff had a legal remedy for six years, and there is no necessity of curing his laches. Equity repels stale claims, and the law subserves the vigilant not the sleeping. The motives to an adherence to the statute of limitations are greater in the case of executors and administrators than any other. An executor, unlike other trustees, has no ascertained *cestuis que trust,* if creditors are *cestuis que trust.* He knows not who may be credi-

tors until they establish their claims. He may not be possessed of evidence of payments, which the testator might have been. The law requires a speedy settlement of the estate and distribution of the funds. Legatees and their sureties would also suffer by the laches of the creditor, at an indefinite period of time.

Now as to the plaintiff's cases. *Burke* v. *Jones*, (2 *Ves. & B.* 275;) the syllabus is "a devise in trust, for payment of debts does not revive a debt, upon which the statute of limitations had taken effect before the testator's death." *Fergus* v. *Gore*, (1 *Scho. & Lef.* 109,) "where lands are devised in trust for payment of debts, the statute of limitations runs not after the death of the testator against debts not barred thereby at his death." The trust in this case was one of a very express kind, created by a devise charged with the payment of certain debts, in accordance with a marriage settlement, and the estates were vested in trustees by act of parliament to mortgage for the debts. The Court, however, say, "at law you had the advantage of the statute because the proceedings were on the judgment only; but in this case it is on the trust," &c. *Roosevelt* v. *Marks*, (6 *Johns. Ch. R.* 293;) "A devise for the payment of just debts, does not revive a debt barred by the statute of limitations or discharged by a certificate of a bankrupt or insolvent." It is put on the footing of the testator's intention, as in *Burke* v. *Jones*. *Rogers* v. *Rogers*, (3 *Wendell*, 503;) "An executor has no right to retain for such a demand, (barred by the statute in testator's life,) due to him personally, notwithstanding a provision in the will for the payment of all just debts; and that even in the case of parent and child." *Clifford* v. *Lewis*, (1 *Mad. & Geld.* 33,) is opposed by *Smith* v. *Porter*, (1 *Binn.* 209.) *Johnston* v. *Humphreys*, (14 *Serg. & Rawle*, 394,) was an acknowledged, continuing, and subsisting trust, growing out of a special deposit, till within less than two years of suit brought; so the statute could not have run on it after such acknowledgment. See also as to continuing trusts, 20 *Johns. Rep.* 125, &c. *Jones* v. *Scott*, (4 *Eng. Chan. Reps.* 413,) is decided on the ground of the testator's intention to create a trust by charging his supposed freehold; where a freehold would not be liable as here, and the chancellor says "the point seems to be by no means free from doubt," and recommends an appeal, 423-4. The case is opposed by *Smith* v. *Porter*, (1 *Binn.* 209.) 10 *Peters's Rep.* 532, is not a case of the statute of limitations. (1 *Brock. Rep.* 547;) the quotation is true as intended, in a general sense; it is as much as to say that the testator's property does not beneficially belong to the executor. And creditors are undoubtedly to be paid before legatees.

*Conclusions.*—1. An executor may plead the statute as to personal assets. 2. If he sells real estate by order of the Orphans' Court, the proceeds go into the ordinary course of administration. 3. If he sells by a power in the will to pay debts, the purpose and consequence are the same. *Hannum* v. *Spear*, (1 *Yeates*, 566.) 4. There

(Man *v.* Warner.)

is no distinction in Pennsylvania between assets arising from land and from chattels, all being assets to pay debts. *Grier* v. *Kelly,* (2 *Binn.* 298.) *Moore* v. *Rham,* (1 *Serg. & Rawle,*.377.)     5. There is therefore no trust arising in respect to the proceeds of lands other than those of chattels.     6. The proceeds not being distinguished, there is no distinction between equitable and legal assets in the effects now sought.     Equitable assets are such as are recoverable only in equity, and distributable equally among all creditors whether by special or simple contract. · Those are not equitable assets which the law could not reach without the act of the testator. (2 *Mad. Ch. Pr.* 586.     2 *Fonb.* B. IV. part 2, chap. 2, sec. 1, and notes.)     Here lands are made liable by statute, and therefore not equitable assets, exclusively cognizable in chancery, but legal assets upon the same footing as proceeds of goods.     In England, on the contrary, lands are not liable to debts; and when the testator makes them liable by will, a pure trust arises, the proceeds become equitable assets, and the remedy is exclusively in chancery.     Here it is exclusively at law, and the assets always legal.     If a testator should attempt to vary the liability of goods by a trust, he could not affect it, (3 *Hen. & Munf.* 106–7.     Neither could he in Pennsylvania turn lands into equitable assets or create a trust to vary the rights of creditors whose liens attach on the property.     His power can neither add to nor take away from the liability, and they are all legal assets.     So the plaintiff treats them in pursuing a legal remedy, without discriminating the proceeds of lands and goods.     His remedy is a legal one, in pursuit of legal assets, and the statute binds him.

The opinion of the Court was delivered by

Huston, J.—Benjamin Warner in his lifetime, drew several promissory notes, all dated on different days in the months of July, and August and September, 1821, and payable at two, three, five and six months.     They were all drawn payable to Joshua and Thomas Gilpin; all endorsed by them, and are now the property of the plaintiff.

Benjamin Warner died on the 24th day of September, 1821, before any of the notes became due.     His will was dated in 1819, by which the defendants were appointed his executors, who proved the will and administered the whole estate; had settled their accounts; and Joseph Warner, the acting executor, after paying all specialty debts out of the funds of the estate, had paid above two thousand dollars of his own money, to satisfy simple contract creditors.     The debt in question was always resisted; no part of it was paid, and no promise by the executors to pay it, or any part of it, was alleged.     This suit was brought to December term, 1828, more than six years after the last of the notes became due.     The action was assumpsit in the usual form.     The pleas were, that they did

not assume, and that they did not assume within six years. To this last plea a special replication was filed, setting out the will in its words at full length, and stating, that the defendants proved the will, and took possession of the estate, disposed of the real estate, and from the time of the testator's death, took possession of the personal estate and managed it; and that the defendants carried on the business of the said decedent for a long time till the bringing of this suit, &c. To this replication the defendants demurred. The only question here discussed, was, whether the statute of limitations bars a debt created by a decedent in his lifetime, but not payable until after his death, in a case where no suit is brought against his executors or administrators until more than six years have elapsed after the debt became due and demandable. I may surmise that it is strange this question should be made in the courts of this state, now for the first time; for certainly it has been acted on in all courts, as a settled matter for more than a century; and so far as I have known or heard, it has not been questioned but that the statute of limitations applied with the same effect to the cases of estates of deceased persons, as to cases where the debtor was in full life.

The reasons why that statute does not apply to this case, which were urged in the argument, are drawn from the cases in chancery in England, and from some very late cases. In that country the lands of a testator are not liable for the payment of debts on simple contract. If a testator charges his lands with payment of all his debts, the lands are not liable by the law, but under and by operation of the will. And sometimes the devise is to trustees to sell, and sometimes to executors, to sell; in such case, a Court of chancery having cognizance of trusts, the matter is decided in that Court; and as the lands are given to the executors, to sell for the purpose of paying debts, they are considered trustees for the creditors, whether called trustees or not, and the creditor and executor being strictly in the relation of *cestui que trust* and trustee, the statute of limitations does not run between them. If the testator devises his real and personal estate to his executors to pay debts, this makes them trustees for the real estate, and gives chancery jurisdiction; and if a bill is brought there, it generally settles the whole estate real and personal. But if there be no devise of lands to pay debts, or if the debtor dies intestate, and administration is granted, the creditor may, and unless on some peculiar suggestion, which will give jurisdiction to a Court of chancery, must sue at law. In a Court of law the executor or administrator represents the deceased; and there is no more trust between him and the creditor, than there was between the deceased in his lifetime, and the creditor; and it has not been said that the statute could not be pleaded with effect in a Court of law. But in England, law, statute and common, in Courts of law and in chancery, has been for some years in a state of improvement, or at least of change, so great and in such rapid succession, that it would

(Man *v.* Warner.)

be unsafe to follow as a precedent, every case of which a report may be brought across the Atlantic; for although we have to a certain extent adopted the common law as it stood at our revolution, and in some cases the statute law as it then stood, and had been in use here, while we were a colony, yet no Court has adopted or said we were bound by the acts of parliament, passed since our independence. And so vital and total have been the changes made by the late acts of parliament, that we run in some cases a risk in relying on the late decisions. It would not be difficult to show that some of the late decisions have innovated as much on the law as it stood before, as the acts of parliament have done on the law and practice as they existed at the death of George the third.

I shall not go into the law on the subject in question, further than to state that in 15 *Viner*, 125, p. 21, Lord HARDWICKE, is represented as saying "The rule of this Court, that the statute of limitations does not bar a trust estate, holds only as between *cestui que trust* and trustee, not between *cestui que trust* and trustee on one side and strangers on the other;" and see *Blanchard on Lim.* 73, and the following pages, and the cases there cited. And it was settled that where the right was barred by act of parliament in a Court of law, the equitable right to the same thing was concluded by the same bar. *Smith* v. *Clay*, (3 *Brown's Chan.* 639,) in note. The dictum of Lord REDESDALE, in *Fergus* v. *Gore*, (6 *Scho. & Lefroy*, 110,) has been cited; but that was a case of trustees, to sell land and pay debts. That great judge of law and equity, when the subject came distinctly before him, said, "There are certain principles firmly settled in a court of equity," and among these he states, "if a party be guilty of such laches in prosecuting his equitable title as would bar him of his title were it solely at law, he shall be barred in equity." *Ibid.* 428-9; and see 2 *Scho. & Lefroy*, 631, where he says, "in all legal titles and legal demands, Courts of equity are bound by the statute." But I shall not go over all the cases cited. *Kane* v. *Bloodgood*, (7 *John. Chan. Rep.* 90,) and *App* v. *Drisbaugh*, ( 2 *Rawle*, 287,) refer to many of them. I will not pursue the inquiry as to the decisions in the last cases in chancery, because I have supposed the practice and some of the principles, are in England in a state of fusion or transition; and it might not be safe to adopt their decisions in every case as soon as we hear of them, lest we might be called on to retrace our steps, or at least to change our position. And again, we are not sitting as a Court of Chancery, but a Court of law, and this suit is an action at law. But beyond all these, we have a train of decisions on the subject of acts of limitation, going over a period of more than thirty years, and which I suppose, and the profession supposes, and every member of this Court supposes, are founded on the true construction of the acts of assembly, and are calculated to promote the interest as well as the peace of society.

Our statute of limitations, which is nearly a copy of the statute of

(Man v. Warner.)

James,· is express that such an action shall·not be sustained, if brought after six years from the time· when the demand became due and demandable. As far back as *Smith and Porter*, (1 *Binney*, 20,) it was decided that a direction in a will, that executors should pay debts, did not prevent the statute of limitations from running. That decision made no distinction between debts due before or after the death of a testator. Our act of 1705, had made lands liable for all debts, whether by specialty or simple contract. No direction in a will had any effect to prevent a creditor from suing and obtaining judgment and issuing execution and collecting his money. The will by its provisions could affect the legatees or devisees, but could in no case restrain or bind creditors. The executor represented the testator; and the creditor could sue him, and recover the debt from the lands or chattels of the testator, precisely as he could have recovered, if the testator had been alive ; and the executor was no more a trustee for a creditor, than the testator had been while alive, and in some cases not so much so. The next case is *Gemberling* v. *Myers's administrators*, (2 *Yeates*, 341.) The plaintiff and Myers had been administrators of Ritter, and had settled their accounts, more than six years before the bringing of this suit ; by that account, in which it would seem they had joined, it appeared that Myers had money of the estate in his hands, while Gemberling had paid out of his own funds above forty-seven pounds for the estate, and clearly Myers ought to have paid him this money; his administrators pleaded the statute of limitations, and SMITH, Justice, at Nisi Prius, held the plea good, and on appeal the decision was affirmed. ·

The cases of *Jones* v. *Moore*, (5 *Binn.* 573,) and *Baily's administrators* v. *Baily*, (14 *Serg. & Rawle*, 196,) were both cases of the statute of limitations as applied to suits against the representatives of a deceased person. So is *Scull* v. *Wallace*, (15 *Serg. & Rawle*, 231.) In each of these cases, it was held, that it was an available plea by an administrator or executor. In the last of them, one of the administrators acknowledged the debt, and with his own consent was examined in the cause. The other pleaded and relied on the statute, and the opinion of this Court was that she might do so. The history of judicial decision on this statute is singular : ·in England every epithet indicating dislike was applied to it. In point of fact it had ceased to produce any beneficial effects; for such were the decisions, that if the person alleged to be debtor, could be induced to enter into conversation with the creditor, the case was somehow or other taken out of the statute. The bad effects were so sensibly felt, that a new enactment was made, which may not be construed away. *Jones* v. *Moore*, was the commencement of a return to the doctrine, that it was an act of the legislature, and as such, ought to be carried fairly into effect ; and we believe it is so now, not only in our own Courts, but in most of the states in the union. In *Fritz* v. *Thomas*, (1 *Wharton*, 66,) its application to

(Man *v.* Warner.)

the estate of a deceased person, was more fully considered, and it was there decided, that though an executor or administrator had acknowledged the claim to be unsatisfied and talked of paying it, he might afterwards plead the statute of limitations with effect.    In *Reynolds v. Hamilton*, (7 *Watts*, 420,) this point came again before this Court; one of the executors had paid part of the claim and promised to pay the balance: on suit brought the statute was pleaded, and with effect.

In several, if not all of these cases, the debt was due in the lifetime of the deceased, though perhaps the six years had not elapsed in any one of them when administration was granted.    I must on this subject speak with doubt; the report is not explicit on this subject in any of them; and in most it is left out of view, and neither the counsel nor the Court notice it as material.    The doctrine here relied on and extracted from the English chancery cases, which say, that when lands, not subject to the claims of creditors, are by a will made subject, the trustees shall not avoid paying the debt by pleading the statute, or in other words, the doctrine that the statute did not continue to run after a debtor died, is not alluded to in any of them—perhaps, because it had never occurred to any human being, except as applicable to any other cases than those strictly between *cestui que trust* and trustee.    It is at variance with our whole system : instead of leaving the estate of a deceased person liable to debts, without regard to their date, our legislature on the 4th of April, 1797, provided that no debt should continue a lien on the lands of a deceased, more than seven years, unless suit brought, or if the debt was not suable within seven years, the evidence of it filed in the prothonotaries' office; and by a late law the time of it is reduced to five years. This has been decided to apply to and protect the money arising from the sale of lands.    6 *Watts*, 33.    By the act of 1798, the lien of a judgment ceases, unless continued by *scire facias*, which if the debtor is dead must be served on his legal representatives.

In point of fact every person experienced in business, knows that more stale claims are brought against the estates of deceased persons than against debtors alive.    Often these claims are suffered to sleep, until all who could give evidence, are removed to the far west or to another world; and in not a few instances, I have known them to rest until the executors had settled their accounts and died, and an administrator *de bonis* raised up by the creditor, for the express purpose of confessing a judgment.    An executor must settle his account within one year, and if the estate cannot be closed within that time, as soon after as possible : the legatees or distributees will claim and get their money within six years.    Executors and administrators must die, and their legal representatives, on the doctrine contended for, must be called on to answer, against reason and justice, for the default of those they represent, in not paying what was not due, and what never would have been claimed, while those who could have proved material facts, were in existence.

(Man *v.* Warner.)

The only case cited from our own books, which could be supposed to have any bearing on this cause, is *Johnson* v. *Humphreys*, (14 *Serg. & Rawle*, 394.) No doubt that decision is correct, but whoever reads that case will see it was taken out of the statute, by more than one of the facts proved. It will also occur to the Pennsylvania lawyer, that our decisions as to the statutes, had not then arrived at the point where they now stand. Several cases were also cited, to show decisions that the statutes do not bar a claim for a legacy or distributive share of an estate. The principles on which we have acted in other cases, must have been abandoned, or they would have led to permitting its application to these cases. But the act of 15th April, 1833, section 19, has settled this by enacting, " That all relations and persons concerned, who shall not lay legal claim to their respective shares within seven years after the decease of the intestate, shall be debarred from the same forever."

On the whole, it is the opinion of this Court, that the letter and spirit of the act applies to claims against the estates of decedents, whether the demand was due and payable in his lifetime or fell due after ; and such having been the decisions of the Court, we will not alter them.

Judgment affirmed.