JONES and others executors of WISTER
*against*
MOORE administrator of GRAY.

**1813.**

Philadelphia,
Monday,
July 12.

THIS was an action upon a promissory note for 2000 dollars, drawn by the defendant's intestate on the 12th of *February* 1799, and payable sixty days after date to *Bond* and *Brooks*, by whom it was indorsed to the testator of the plaintiffs. The declaration contained but one count, which was upon a promise by the intestate to the testator; and the pleas were *non assumpsit* and the statute of limitations.

Upon the trial of the cause before *Brackenridge* J. at a *Nisi Prius* in *January* 1812, the plaintiffs' counsel, after proving the handwriting of *Gray*, (who it was admitted died in *November* 1805) offered the following letters, to take the case out of the statute; and they were read under a reservation of the point, whether, supposing them to amount to an acknowledgment of a subsisting debt, they supported the plaintiffs' count. They were written by the defendant to one of the plaintiffs.

To Mr. *John Wister.*
Dear Sir,                          Reading, 7th *Dec.* 1807.
I will be obliged to you to write me, whether I am at liberty to write to the heirs of *Robert Gray*, to call on me for the assets belonging to his estate, which is in my hands, or whether I must still hold them *until your claim is satisfied.*
I am, sir, your humble servant,
                    *William Moore*, admr.

To Mr. *John Wister.*
Dear Sir,
I was not at home when your letter arrived, or I would have answered by the *Monday's* mail. As an administrator, I can make no composition but at my own risk. Mr. *Bond* knows well that no part of the money came into Mr. *Gray's* hands; this I have often heard Mr. *Gray* declare, and this Mr. *Gray's* friends know. If Mr. *Bond* has any just claims against Mr. *Gray's* estate, let him bring them forward pro-

An acknowledgment of a subsisting debt, made within six years before action brought, to the executors of the creditor, will not, where the issue is upon the statute of limitations, support a declaration upon a promise to the testator himself. There should be a special count.

An acknowledgment does not revive the old debt, but is evidence of a new promise, for which the old debt is a consideration.

The administrator of the drawer of a note wrote several letters to the executors of the indorsee, recognising the existence of the demand, but declining to take up the note. He however finally wrote, that he would be in town in a few days, and *would settle the matter in some way.* Held that this was sufficient evidence of a promise to pay.

1813.

JONES
v.
MOORE.

perly attested. *With taking up those notes in controversy, I will have nothing to do.* I am, sir, your humble servant,
    *Reading*, 6th *February* 1809.     *William Moore.*

To Mr. *John Wister.*
    Dear Sir,
    I will be obliged to you to inform me the result of the arbitration between you and *Bond.* The heirs keep pressing me for money, and I do not wish to keep it from them a moment longer than I can with safety pay it to them. I am, sir, your humble servant,
    *Reading*, 14th *March* 1810.     *William Moore.*

To Mr. *John Wister.*
    Dear Sir,     *Reading*, 18th *March* 1810.
    I received your favour of the 16th, and return you thanks for the statement you have given me of Mr. *Bond's* affairs. Was my own interest only concerned, I might be induced to enter into some compromise with *Bond.* But as administrator, I cannot do it without the consent of the heirs, unless at my own risk. Some of the heirs are in *Ireland*, and some in the back country. It would require from twelve to eighteen months to consult them; and unless I find that I am perfectly safe, I will do nothing without their consent. I think it necessary to inform you, that Mr. *Gray's* property *will not pay above half of your demand.* I am, sir, your humble servant,
     *William Moore.*

To Mr. *John Wister.*
    Dear Sir,     *Reading*, 26th *July* 1810.
    I received your favour informing of the decision of the arbitrators in *Bond's* business. I expect to be in the city in a few days, *and will settle the matter some way.* To shew the principles of *Bond*, his attorney by his order, has ordered me to retain money in my hands for the 1500 dollars, provided they fail in an appeal they mean to enter. I would have answered you sooner but was from home. I am, sir, your humble servant,     *William Moore.*

His honour charged the jury, that the letters amounted to an acknowledgment of a subsisting debt due to the plaintiffs, by the intestate, and if they were of the same opinion, they should find for the plaintiffs, which they accordingly did.

The defendant moved for a new trial, and this motion was now argued in connection with the reserved point.

*M'Kean* for the plaintiffs. 1. The letters supported the count, if they amounted to an acknowledgment of the debt. An acknowledgment *revives* the old debt, and takes the case out of the statute, not because it is a new promise or evidence of a promise, but because it shews that the old debt has never been discharged. Where an acknowledgment is made, the case is not within the equity of the statute; for the statute never intended to prevent the recovery of a debt acknowledged to be due. It is in fact a waiver of the statute. Hence an acknowledgment after action brought, is a bar to the statute, which could not be, if it was merely evidence of a new promise. *Yea* v. *Fouraker* (*a*), *Sluby* v. *Champlin* (*b*). In *Heylin* v. *Hastings* (*c*), the action was by the executor for goods sold by his testator to the defendant, and the plea was *non assumpsit testatori* within six years. Upon proof of an acknowledgment to the executor, the plaintiff had judgment.

2. The letters amount to an acknowledgment. They recognise the existence of the debt, which the administrator declined paying, because as it was an accommodation note to *Bond* and *Brooks*, and a suit was going on by the plaintiffs against them, he wished the money to be obtained from that source; but when that suit proved abortive, he said in his last letter, that he would settle the matter some way. This is much stronger than many of the cases. *Quantock* v. *England* (*d*), *Trueman* v. *Fenton* (*e*).

*Binney* for the defendant. 1. The act of assembly says that all actions upon the case shall be commenced within six years next after the cause of such action accrued, and not after. The plaintiffs must therefore shew a cause of action within six years; and the only cause of action is a promise. The issue is in fact joined upon the existence of such a promise; and unless an acknowledgment amounts to that, it is nothing. The promise proved, if any, is then a promise by the administrator to the executor; whereas the promise laid is by the intestate to the testator; so that the proof fails on both sides.

(*a*) 2 *Burr.* 1099.    (*c*) *Carth.* 470.    (*e*) *Cowp.* 545.
(*b*) 4 *Johns.* 461.    (*d*) 5 *Burr.* 2639.

1813.

JONES
v.
MOORE.

This point is perfectly settled by authorities. *Green* v. *Crane* (a), *Hickman* v. *Walker* (b), *Sarell* v. *Wine* (c), *Marborough* v. *Widmore* (d), *Whitaker* v. *Whitaker* (e). The whole learning upon the subject is contained in a note to 2 *Saund.* 63 g. by Serjeant *Williams;* and the books of precedents shew the form of the count that is proper for a case in which the acknowledgment is to the executor. 3 *Wentw.* 71., 1 *Chitty* 204., 2 *Chitty* 60, 61. If an acknowledgment operated by revival of the original debt, then it would answer, though accompanied by an express refusal to pay, which is contrary to the opinion of the present Chief Justice, in *Murray* v. *Tilly*, and of Judge *Washington*, in *Reid* v. *Wilkinson*. In *Heylin* v. *Hastings*, as reported in 5 *Mod.* 426., and 1 *Ld. Ray.* 389., this point was not made.

2. If the letters were from the original debtor, there would be strong ground for the plaintiffs' argument, under the decisions that have taken place. But they are from a representative, knowing nothing of the original transaction, and saying nothing from his own knowledge. His remarks shew that he was acquainted with a claim, not that he recognised a *subsisting debt*, which is essential. *Cowan* v. *Magauran* (f). Many adjudications on the subject of the statute, go to an extravagant length. The Court should require either a new promise, or evidence from the debtor that he knows the debt is unpaid, from which the law will imply a promise.

TILGHMAN C. J. This action was brought on a promissory note dated the 12th of *February* 1799, given by *Robert Gray* deceased to *Bond* and *Brooks*, payable sixty days after date, and indorsed by *Bond* and *Brooks* to *William Wister* deceased. Issue was joined on the statute of limitations; and on the trial several letters from the defendant *Moore*, were read in evidence, from which the jury, agreeably to the opinion of the judge before whom the cause was tried, inferred a promise to pay the debt. It was reserved as a point for the decision of the Court in bank, whether supposing a promise by the defendant to have been proved, it supported the plaintiffs' declaration, which was founded on a promise to *William Wister* the testator. I will consider first, whether such a pro-

| | | |
|---|---|---|
| (a) 2 *Ld. Ray.* 1101. | (c) 3 *East* 409. | (f) *Wallace* 66. |
| 6 *Mod.* 309. S. C. | (d) 2 *Stra.* 890. | |
| (b) *Willes* 27. | (e) 6 *Johns.* 112. | |

mise will support the declaration, and secondly, whether the
letters warranted the conclusion drawn by the jury.

1. The act of assembly declares, that the action shall be
commenced, " within six years next after the cause of such
" action, and not after." If six years elapse after the cause of
action accrued, there can be no recovery, although the debt
is *not extinguished*. It remains due in *conscience*, and is a
good consideration for a new promise. It remains in some
respects due in *law* too, for if the defendant omits to plead
the act of assembly, he is considered as having waived the
benefit of it, and the plaintiff may recover against him. The
letters of the defendant are said to contain an *acknowledg-
ment* of the debt, which, as the plaintiffs' counsel contends, is
sufficient *per se*, to take the case out of the statute, not be-
cause it is evidence of a new promise, but because it *revives*
the debt. There is some confusion, and perhaps some inconsis-
tency in the cases on this subject; but it appears to me from
the reason of the thing, and from a review of all the cases, that
an acknowledgment of the debt can only be considered as evi-
dence of a new promise, or what is pretty much the same thing
in substance, as a circumstance from which the law will imply
a new promise. To consider this matter on principle. When
the defendant pleads *non assumpsit infra sex annos*, and the
plaintiff replies *assumpsit infra sex annos*, how can the issue
be found for the plaintiff, without proof of a promise express
or implied within six years? It is the very point, and the only
point in issue. I cannot comprehend the meaning of *reviving*
the old debt, in any other manner than by a new promise. But
if there was a new promise in the present case, it was to the
plaintiffs the executors, and not to their testator as stated in the
declaration, and therefore the declaration would not be sup-
ported. Let us see next how the authorities stand. The case of
*Heylin* v. *Hastings*, is reported in 1 *Ld. Ray.* 389. 421., 12
*Mod.* 223., *Comyns* 54., 1 *Salk.* 29., *Carth.* 471. The report
in *Carthew* is not so good as in the other books. It was an ac-
tion of general *indebitatus assumpsit*, by an executor for goods
sold &c. by his testator. Issue was joined on the statute of limi-
tations; and the plaintiff recovered on proof of the debt, and
evidence of a promise within six years to *the executors*, to pay
the debt if they could prove it. Lord *Holt* consulted all the
judges of *England*, and they were all but two of opinion that
an *acknowledgment* of the debt was sufficient evidence of a

promise, but did not *of itself* amount to a promise. It was taken for granted that the plaintiff was entitled to recover, but the point does not appear to have been considered, that supposing a promise to have been made, it was a different promise from that laid in the declaration, *viz.* a promise to the executor and not to the testator. In subsequent cases this point has been brought directly into question, and it has been decided, that where the promise is laid to have been made to the *testator*, it cannot be supported by proof of a promise within six years to the *executor*. In *Green v. Crane*, 2 *Ray.* 1101, reported by the name of *Dean v. Crane*, in 1 *Salk.* 28. and 6 *Mod.* 310., the declaration was on a promise to the testator, issue on *non assumpsit infra sex annos*, and evidence of a promise within six years to the *executor;* held that the evidence did not support the declaration, and this by Lord *Holt* who delivered the opinion of the judges in *Heylin v. Hastings.* In the Duke of *Marlborough's exrs.* v. *Widmore,* 2 *Stra.* 890., the declaration was on a promise to the testator, issue being joined on the statute of limitations; the plaintiffs were permitted to amend by laying the promise to the executors, on payment of costs. In *Hickman* v. *Walker, Willes' Rep.* 27, the declaration laid a promise to the testator, the defendant pleaded the statute of limitations, and the plaintiff replied, that letters testamentary were committed to him within six years, by which cause of action accrued to him; held to be a *departure*, because it was a different cause of action from that laid in the declaration. In 2 *Saund.* 63 *a.* (*notis*) the cases are all collected and the principle asserted, that where an acknowledgment or promise has been made to the executor, it should be declared on accordingly, and a declaration laying a promise to the testator cannot be maintained. The same principle seems to be adopted by the Supreme Court of *New York*, in *Whitaker* v. *Whitaker*, 6 *John* . 112. From those authorities, and from the nature of the issue joined in this case, it appears to me that the evidence such as it was did not support the declaration, because it tended to prove a promise to the *executors* more than six years after the death of the testator.

2. I will now consider the evidence, which consisted of five letters from the defendant to *John Wister*, one of the plaintiffs. In the first the defendant asks the plaintiffs whether he is at liberty to pay over the assets in his hands to the

representatives of *Gray*, or whether he must withhold them, *until the plaintiffs' claim was satisfied.* In the second letter the defendant says, that he can make no composition but at his own risk, and that Mr. *Bond* well knew that no part of the money came to *Gray's* hands. In the third letter, the defendant asks to be informed of the result of the arbitration between the plaintiff and *Bond*. The fourth letter contains nothing material. In the fifth the defendant acknowledges the receipt of a letter from *Wister*, informing him of the decision of the arbitrators between the plaintiffs and *Bond*, and adds, " I expect to be in the city in a few days, and " will settle the matter some way." From the whole of these letters it appears that the defendant knew of the plaintiffs' claim and never denied it, on the contrary, he constantly recognised it as *an existing debt*. The dispute was not with the plaintiffs, but with *Bond* and *Brooks*, the indorsers of *Gray's* note, and who, as *Gray* said, received the money which was the consideration of the note. The last letter is something very like an express promise; " *settling the matter some way*," would lead a person to expect some kind of satisfaction. It is certainly much stronger evidence of a promise, than several of the cases which have been held sufficient to take a case out of the statute of limitations. I agree therefore with Judge *Brackenridge*, that the jury were justified in presuming a promise, but as it was a promise not to the testator but to the executors, it varied from the declaration, and did not support the issue on the part of the plaintiffs. On this ground, I am of opinion that the verdict should have been for the defendant, and therefore there should be a new trial.

YEATES J. The plaintiff declared in this case on a promissory note dated the 12th of *February* 1799, drawn by *Robert Gray* in his life time, payable to *Bond* and *Brooks*, and by them indorsed to *William Wister* in his life time. The promise to pay is stated to have been made by *Gray* to *Wister*, the former of whom died in *November* 1805. The defendant pleaded the act of limitations and the plaintiffs replied thereto. Upon this issue nothing can be more clear in point of fact, than that a promise made by the administrator of the intestate, to one of the executors of the testator, would not shew a promise by the intestate to the testator. And considering the matter in a legal view, letters written by the defendant's

administrator to the plaintiff's executor, could not be received in evidence in the manner the plaintiffs have declared, to prove an acknowledgment of the debt, so as to take it out of the statute of limitations. In such instances it is absolutely necessary, after stating the true nature of the demand according to its circumstances, to insert a count shewing specially the promise to pay by the executor or administrator. This I take to have been abundantly proved by the cases adduced by the defendant's counsel, and particularly by *Hickman et al. exrs.* v. *Walker*, *Willes* 27. On the reserved point therefore, I am clearly of opinion that a new trial should be awarded. The plaintiffs upon application to the Court will be allowed to add the special count to their declaration, and they will then have the full benefit of the evidence.

But the Court are now called upon, to express their sentiments on the legal operation of the letters which were read on the trial, as it may save further litigation between the parties.

I hold the act of limitations to be a most beneficial law, and that it strongly tends to the peace and quiet of social life. The consequences of aiding stale demands, where vouchers may have been lost, and material witnesses have paid the common debt of nature, are obvious to every one. Some hard cases it is true may have occurred under the act, wherein the recovery of fair and honest debts may have been barred by its operation; but on the score of sound policy, it is better to submit to private inconvenience, than introduce a general mischief. My judgment is not yet prepared to go to the extent of some of the cases decided on this subject. We are told in the books that an acknowledgment of a debt is only evidence of a promise to pay it. Where it is accompanied by circumstances or declarations, that the party means to insist on the benefit of the statute, no promise to pay can possibly be implied without violating the truth of the case, and so it has been decided.

There was much truth in the observation of the defendant's counsel, that declarations by executors or administrators respecting demands brought against them, should not be construed so strictly against them, as if made in their individual character, where they must be supposed to be conusant of their duties as well as rights. Inquiries may fairly be made by persons in their representative character, concerning the justice

of claims made against their testator or intestate, which in heir personal capacity well might be supposed to imply a promise to pay them. Under these impressions, I at first doubted, whether the letters could be construed as an acknowledgment of the justice of this debt. My doubts have been removed on more mature reflection.

In Mr. *Moore's* letter of the 7th of *December* 1807, he desires information whether he is at liberty to write to the intestate's heirs to call on him for the assets in his hands; or whether he must hold them, *until this claim is satisfied.* He evidently treats this claim as just, and submits to the executors whether he should retain the assets in his hands to discharge it. No evidence was given on the trial of the ground of the action brought by the executors against *Bond;* but it is most highly probable from the other letters which were written, that it was founded on his indorsement. So it is stated by the plaintiffs' counsel, and if the fact be so it is capable of proof on another trial. The meaning of the first letter then, would plainly be, whether the executors would look to *Bond* and *Brooks* as indorsers, and give up their demand on the estate of the drawer. The letters written by the executors to Mr. *Moore* were not produced on the trial, but they may be shown at a future day, if it should be thought that they can throw light on the true meaning of the administrator. His letter of the 26th of *July* 1810, acknowledges the receipt of Mr. *Wister's* letter informing him of the decision of the arbitrators in *Bond's* business; and he therefore says, he should be in the city in a few days, *and would settle the matter in some way.* This is powerful evidence connected with the former letter in 1807, and unless they can be fully explained, they amount to such an acknowledgment of the debt, as will take the case out of the act of limitations.

BRACKENRIDGE J. I am not about to dissent from the Chief Justice; it was my way of thinking on the trial as to the result of the case. Nevertheless I will add some observations which may perhaps in some particulars be different. It is the language of some judges on the benches of *England,* that if the statute of limitations was for the first time to receive a construction, nothing in the nature of an exception to take a case out of the statute would be admitted. I incline to be of a contrary way of thinking, on the principle that a

JONES
*v.*
MOORE.

1813.

statute bearing on a contract *uberrimæ fidei* which is their own language, ought to have a liberal application. Who ever heard of a statute under which there were not equity exceptions? In applying the statute and ascertaining them, we must look at the mischief which the statute was intended to remedy. This was principally the advancing stale claims in the case of honest but improvident debtors, who may have lost the evidence of papers, or testimony of witnesses who could have established a discharge of the debt. The statute goes on this presumption of payment, where a time has elapsed without a demand made; but where that presumption is removed by an *acknowledgment of the debt*, it has been considered a case out of the statute, because out of the reason of it.

That a bare acknowledgment of the debt, without any promise to pay, may well take a case out of the statute, is laid down in the *English* tracts, and sactioned by elementary writers abundantly. I will refer only to 2 *Saund.* 64., *Selwyn's Ni. Pri.* 122. A distinction was formerly taken, says Serjeant *Williams*, in his note, between a *promise to pay* and a bare acknowledgment, but no longer regarded, it being now settled that an acknowledgment of the debt takes it out of the statute. And also *Selwyn* 126, that however it was ruled in *Heylin* v. *Hastings*, yet from the language of more modern decisions it must be inferred, that the mere finding by a jury of an acknowledgment of the debt within six years of action brought will be sufficient. But it is laid down also and sanctioned by Lord *Mansfield*, not to speak of later authorities, that an acknowledgment may be inferred even from equivocal expressions. A letter written in ambiguous terms shall be left to the jury to say, whether it amounts, not *to a promise*, for that is not the language in the books to which I refer, but to *an acknowledgment*. The bare saying that no demand had been made within six years, has been left to the jury as evidence of an acknowledgment, who found accordingly, and a new trial refused. It has been said that the slightest acknowledgment will take a case out of the statute, as when defendant said, " I am ready to account, but nothing is due." But what is more, circumstances will take a case out of the statute, from which may be inferred an acknowledgment. The idea of a *new promise*, which is sometimes introduced in the *English* decisions, does not appear to be on principle correct. The saying your demand is barred by the statute, and

*I will not pay*, has been held an acknowledgment of the debt, and taken the case out of the statute. How could there be a new promise here? The truth is, it is the old promise that is *continued*, or as some choose to say, *revived*. A new promise would be a *nudum pactum* without a reference to the consideration of the old. Why then not go upon the old promise, and allege it as still continuing, by force of the acknowledgment of a consideration still existing. The replication to the statute, of an acknowledgment of the debt within six years, and demurrer to this, would it prevail? Why then, not the promise laid as made to the deceased? It is laid down by Lord *Mansfield*, 2 *Burr.* 1099, " that an acknowledgment " of the debt even after action commenced, takes the case " out of the statute." In that case the promise laid in the declaration could not be the promise raised by the acknowledgment; which proves that the language of a new promise, or reviving a promise, is incorrect, and it is the original promise that ought to be declared upon, unless in the case of an express promise to pay, and undertaking by a representative, making the debt his own. The idea of a new promise is a fiction introduced by the *astutia* of the courts, to take a case out of the statute, and yet preserve the forms of pleading as before. This is done by reciting the original promise as a consideration of the new, which by a technical fiction is alleged to be made. But it would have answered the same purpose, and superseded the necessity of a fiction, to have *replied specially* to the plea of the statute, that the defendant had acknowledged the debt within six years. I am clear that such a special replication could not but be sustained. In the case before us therefore, I would give leave to withdraw the joinder in issue on the plea of *non assumpsit*, and reply specially according to the truth of the case and in bar of the defendant's plea, that he had acknowledged the debt within six years. This would be my way of proceeding, and what I would ask leave to do in order to get quit of the fiction of a promise, which the common mind cannot comprehend. But if it is preferred to follow the old forms and stick to the fiction, it may be done by asking leave to change the declaration by alleging a new promise in consideration of the old, or adding a second count. According to the law now holden, it will come to the same thing; but I prefer the simplicity of truth where fiction may as well

1813.

JONES
*v.*
MOORE.

be avoided. It is more comprehensible by the student of the law, and will mar less the good sense and logic of the science of pleading.

But the giving leave to do one or the other of these must depend upon the evidence of an acknowledgment of the debt by the defendant. I am of opinion now as I was at the trial, that there was evidence of an acknowledgment sufficient to take the case out of the statute. This being the case, I have wished to support the pleadings; but the taking issue on the plea of *non assumpsit* seems to be in the way. I am constrained to say there shall be a new trial, with leave to amend; though as the defendant must see that it can answer no other end than to give delay, I would recommend the payment of the demand according to the verdict, unless he chooses to take the sense of another jury on the fact of acknowledgment. I find a dictum upon the point in the charge of the Court, that the special matter may be pleaded. 8 *Mass. Rep.* 129. " The defendant pleads what is *prima facie* a legal bar " to the plaintiff's demand. The plaintiff replies other matter " which shews the defendant to be bound." And 134. " The " sound principle which ought to govern in the construction " of the statute (of limitations) is, that a presumption arises " that the defendant from the lapse of time has lost the evi- " dence which would have availed him in his defence, if sea- " sonably called upon for payment. But when this presump- " tion is rebutted by an acknowledgment of the defendant " within six years, the contract is not within the intent of the " statute." So that I cannot doubt, but that if the defendant were to say, " the debt is so, but I will not pay," he would be liable. This puts an end to all idea of a promise, unless by technical fiction or legal implication, the necessity if not ab- surdity of which may be avoided by pleading the special matter.

New trial granted