CRAWFORD AND ANOTHER v. CHILDRESS' EXECUTORS AND EXECUTRIX.

1. When a bond is assigned to the executrix of the obligor and another, and the executrix assigns her interest in the same to her co-assignee, the latter may maintain a suit in equity on the bond against the executors and executrix of the obligor.

2. Though the legal proprietor of a lost bond may maintain an action at law (by statute) for the recovery of its amount, the jurisdiction which originally pertained to equity in such a case is not divested.

3. *Semble.* According to the practice in the English Chancery where a demurrer is to the whole bill, it is overruled by a plea covering the same ground, and the plea in its turn is superseded by an answer which presents the same matter in defence. But a different practice prevails here *by statute*, which makes it "lawful for the defendant to embrace all the matter of his plea and demurrer, either general or special in his answer," and dispenses with the necessity of a defendants filing a plea or demurrer in form.

4. And a plaintiff cannot object at the hearing that a defendant instead of insisting upon the matter of a plea and demurrer in his answer, has demurred, pleaded and answered in form and at length. The objection if available, should have been made on a motion to refer the plea and demurrer with instructions to reduce them to a condensed statement of the points they present.

Crawford and another v. Childress' Executors and Executrix.

5. Where a bond was executed in a State other than that in which suit is brought for its recovery, the statute of limitations of the *lex fori* is the criterion by which it is to be determined whether *prescription* is an available plea in bar.

6. *Semble.* An acknowledgement in order to create a promise by implication of law, ought to contain an unqualified and direct admission of a previous subsisting debt which the party is liable and willing to pay.

7. A verbal acknowledgement by the obligor will not prevent the statute of limitations from running against a bond, nor will it revive the remedy upon it after the bar of the statute has become complete.

This case comes here by writ of error from the Chancery Court holden at Tuscaloosa.

The plaintiffs in error were complainants below. In their bill they allege that the defendants testator executed and delivered to Martin Phifer of Cabarrus county, North Carolina, a writing obligatory to the effect following: "Twelve months after date, I promise to pay unto Martin Phifer or order, the sum of one thousand dollars with interest from the date, for value received by me. Witness my hand and seal, November 1st, 1817.

JAMES CHILDRESS, [seal.]

Test: J. Phifer,
    Thos. B. Childress."

That in the latter part of the year 1835, or early in 1836, the obligor having previously made and declared his last will, by which the defendants were made executrix and executors, departed this life. That the testator in addition to valuable real estate, left personal property more than sufficient to pay all his debts, and that the defendants have proved his will and qualified as executors.

It is further stated that after the death of the testator, viz: on or about the 10th day of February, 1836, Martin Phifer indorsed the writing obligatory set out above, and thereby assigned one half the amount thereof to Mary Childress the executrix, and the other half to the plaintiffs. That after the making of such assignment the writing was placed in the hands of James L. Childress to be put in a train for collection, and has been lost by him; and that after the loss, viz: on the 29th day of October, 1836, Mary Childress by a deed of assignment, transferred her

right, title and interest in the writing, to the plaintiff Crawford. Which deed accompanies the bill as an exhibit.

The plaintiffs also allege that they caused their claim to be pre-, sented to the defendants within eighteen months after their qualification as executrix and executors—that the rate of interest of North Carolina is *six per centum per annum*. Yet notwithstanding the justness of the demand, the defendants refuse to pay the same. The bill concludes with a prayer for relief adapted to the nature of the case, and also that process of *subpœna* may issue.

Each of the defendants answer separately, the executrix admitting the execution of the writing obligatory, that it is still unpaid and stating the reasons why a collection has not been pressed heretofore. The executors in addition to answering the allegations of the bill, each demurred to it for want of equity and pleaded the statute of limitations.

The contents of the bond and its loss are shown by proof, and the due presentation of the claim to the defendants is admitted. Depositions were also taken by the plaintiffs tending to prove an acknowledgement by the testator before the statute of limitations had run, of his indebtedness to Martin Phifer.

His honor the Chancellor, deeming the proof of an acknowledgement by the testator insufficient to remove the bar of the statute, dismissed the bill at the plaintiffs cost.

PECK, for the plaintiff, insisted that the demurrers and pleas filed by two of the defendants, were overruled by their answers in which the statute of limitations was not insisted on. But if the court differed with him on this point, he then contended that the proof of an acknowledgement by the testator of his indebtedness within sixteen years prevented the statute from operating as a bar. And though the acknowledgement was made before the statute had run, it was quite as effectual, and perhaps more so in this case, than if made after the bar had become complete.

WM. COCHRAN, for the defendant, argued that the English practice which required that a demurrer and plea should be first

disposed of before answer was interposed, presenting the matter of defence relied on by plea, did not obtain in this State. It was abrogated and the law in that respect entirely changed by the act of 1823, " to regulate proceedings in chancery suits," (Aik. Dig. 287.) The plaintiffs are not entitled to a decree for the amount of the bond, the remedy was extinguished by its assignment to Mary Childress, the executrix. He argued further, that the proof of an acknowledgement by the testator was insufficient to prevent the operation of the statute of limitations, and that where the indebtedness was evidenced by a bond, an acknowledgement would not stay the operation of the statute, or revive the remedy upon it. And lastly, chancery has no jurisdiction, because the statute had given a remedy in the case of lost bonds.

COLLIER, C. J.—It is insisted for the defendants in error, that equity cannot entertain the case stated in the plaintiffs bill; because, 1. Mary Childress having been a joint proprietor with the plaintiffs (since she qualified as executrix) of the bond sought to be recovered, could not by an assignment of her interest, revive the remedy against herself and co-defendants. 2. There is an adequate remedy at law for the recovery of lost bonds, &c.

To sustain the first objection, the defendants have cited the cases of Tindal v. Bright, (Minor's Reps. 103,) and Ramsey v. Johnson, (Minor's Reps. 418.) In the former it was decided that an action at law could not be sustained on a bill single, payable to a firm of which one of the obligors was a partner; and in the latter, if the payee of a promissory note signs it as a surety, an action at law cannot be sustained on it, either against the principal or the surety. The court in Tindal v. Bright, speaking of an obligation to pay money, say: " We believe it to be a principle equally reasonable and sound, that if a security of this nature by indorsement or otherwise, comes into the hands and becomes the property of one of several co-obligors, all right of action in a court of law is thereby extinguished. There can be but one satisfaction of such contract; and it would seem absurd to suppose that the security may become the property of one

bound to discharge it, and yet remain in legal presumption undischarged." Whether this reasoning will apply to a case such as the present, it is wholly unnecessary to consider, for even in the cases cited, the court restricts its remarks to the legal remedy without denying the jurisdiction of equity. And it is clear that if there is a subsisting right, a court of chancery which looks rather at the substance, and in its procedure is untrammeled by the technical rules prevailing at law, can afford a remedy which will make the right available. Were it otherwise, the strange anomaly would present itself, of an acknowledged right where there was no corresponding remedy.

In respect to the second objection, the act of 1828, "regulating judicial proceedings," [Aik. Dig. 329,] authorizes the proprietor of any lost bond, bill, note, agreement, or other instrument, upon first making oath of the loss, and that the same has not been paid, satisfied or discharged to sue and recover at law thereupon, upon making proof of the contents of such bond, &c.

The precise question now raised upon this statute, came before the court in Tindall v. Childress & May, (2 Stew't. & Porter's Rep. 251.) In that case, it was assumed that chancery originally possessed jurisdiction to enforce the collection of lost bonds and notes; and though the statute simplified the proceeding at law, it did not exclude the interference of equity. See also, 1 Story's Eq. 97 to 103, in which the foundation of the jurisdiction and the manner of its exercise in such cases, is stated at length. We are contented to follow the law, as it was declared in the case cited, without examining the question more at large; and are brought to the conclusion, that the objections taken to the equity of the bill cannot be sustained.

It is objected by the plaintiffs that the court cannot regard the demurrers or the pleas which are embodied in the answers of two of the defendants: that by a well settled rule of chancery practice, where a demurrer is to the whole bill, it is overruled by a plea covering the same ground, and the plea in its turn, is superseded by an answer which presents the same matter in defence. (Story's Eq. Pl. 532.) However well founded such a practice may be in the English chancery, it cannot be followed here.

By the act of 1823, " to regulate proceedings in chancery suits," (Aik. Dig. 287,) it is among other things enacted that "no plea or special demurrer, shall be filed to any bill or answer, but it shall be lawful for the defendant to embrace all the matter of his plea and demurrer, either general or special, in his answer, and shall have the same benefit thereof, as if the same had been pleaded," &c.   This statute dispenses to a great extent with formality in equity pleading : neither the demurrer nor plea, need be drawn out at length.   It was sufficient for the defendants in the case before us, to have said in their answers, that they insisted upon the benefit of a demurrer to the bill, and upon the statute of limitations, in bar of a recovery.   But instead of embracing an informal statement of these matters of defence in their answers, they have embodied a demurrer and plea, drawn up with technical precision.   The only objection to this mode of pleading under our statute is, that it introduces into the record unnecessary prolixity; and perhaps upon reference, the demurrer and plea might be so much pruned down, as to reduce them to a condensed statement of the points intended to be brought to the view of the court.   But no such reference was asked.   The objection to the pleading was, for the first time, made at the hearing.   We cannot doubt but the defendants are entitled to the full benefit of their demurrers and pleas.

This brings us to consider whether the plea of the statute of limitations will operate so as to bar a recovery.   Though the contract was made in North Carolina, this question must be decided by a reference to the *lex fori*, our statute applicable to the case, is as follows: " Every action of debt, or covenant for rent, or arrearages of rent, founded upon any lease under seal, and every action of debt upon any single or penal bill, for the payment of money only, or upon any obligation with condition for the payment of money only, or upon any award under the hands and seals of arbitrators, for the payment of money only, shall be commenced and sued within sixteen years after the cause of such action shall have accrued, and not after; but if any payment shall have been made on any such lease, specialty, or award,

within or after the said period of sixteen years, then an action instituted on such lease, specialty, or award, within sixteen years after such payment shall be good and effectual in law and not after." [Aikin's Digest 270 ]

The earlier decisions in regard to the English statute of limitations, held that the acknowledgement of a debt without a promise to pay, would not deprive the defendant of the benefit of the statute. [Dickson v. Thompson, 2 Shower's Rep. 126; 2 Vent. Rep 152.] It was next determined that an acknowledgment of a debt, was evidence from which a jury might infer a promise to pay, but would not, if specially found, warrant the court to give judgment for the plaintiff. [Heylin v. Hastings, Com. Rep. 54; 5 Mod. Rep. 425; Carth. 470; 1 Lord Raym. Rep. 389; 1 Salk. Rep. 29; Bul. N. P. 148.] The courts afterwards went further, and held the slightest acknowledgement whether by word or in writing, would take the case out of the statute. [Quantock v. England, 5 Bur. Rep. 2630; Bryan v. Horseman, 4 East 599; Clarke v. Bradsaw & Coghlan, 3 Esp. Rep. 155; Rucker v. Hannay, 4 East Rep. 604, in note.] But the more recent adjudications both in the U. States and England, have given to the statute a construction more just, and in furtherance of the intention of its framers. [7 Taunt. Rep. 608; 3 D. & R. Rep. 267; 4 M. & S. 457; 2 Taunt. Rep. 380; 5 M. & S. 75; Collyer v. Willcck, 4 Bing. Rep. 313; Owen v. Woolsey, Bull. N. P. 148; Wetzell v. Bussard, 11 Wheat. Rep. 309; Barg's v. Hall, 2 Pick's Rep. 368; Clementson v. Williams, 8 Cranch. Rep. 74; Camdridge v. Hobart, 1 Pick. Rep. 232; Sands v. Gelston, 15 Johns. Rep. 511; Lawrence v. Hopkins, 13 Johns. Rep. 288; Read v. Wilkenson, 2 Brown's Rep. 16; Guier v. Pearce, 2 Brown's Rep. 37; Jones v. Moore, 5 Binn. Rep. 580; Marshall v. Daliber, 5 Conn. Rep. 480; Frey v. Kirk, 4 Gill. & Johns. Rep. 509; Lee v. Polk, 4 McC. Rep. 215; Ford v. Phillips, 1 Pick. Rep. 203.] And while in respect to most contracts, the bar of the statute of limitations may be avoided by an admission of indebtedness or a promise, yet "an acknowledgement which will revive the original cause of

action must be unqualified and unconditional. It must show positively, that the debt is due in whole or in part. If it be connected with circumstances which in any manner affect the claim, or if it be conditional, it may amount to a new *assumpsit*, for which the old debt is a sufficient consideration; or if it be construed to revive the original debt, that revival is conditional, and the performance of the condition, or a readiness to perform it, must be shown." [Wetzell v. Bussard, 11 Wheat. Rep. 309.] And "if there be no express promise, but a promise is to be raised by implication of law, from the acknowledgment of the party, such acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If there be accompanying circumstances which repel the presumption of a promise, or intention to pay; if the expression be equivocal, vague, and indefinite, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways, we think they ought not to be received as evidence of a new promise to revive the cause of action. [Bell v. Morrison *et al.* 1 Peter's Rep. 351: Moore v. The Bank of Columbia, 6 Peter's Rep. 86: See also, Fries Boisselet, 9 Seg't. & R. Rep. 128: Danforth v. Culver, 11 Johns. Rep. 146: Whitney v. Bigelow, 4 Pick. Rep. 110: St. John v. Garrow, 4 Porter's Rep 223: McClung v. Silliman, 3 Pet. Rep. 278.]

His honor the chancellor, examined this case upon the hypothesis that, the bar of the statute might be avoided by showing a sufficient acknowledgment of indebtedness by the testator—but considered that the proof was insufficient for that purpose, because it did not shew a willingness to pay the debt. Without attempting to consider the justness of the conclusion of his honor upon the evidence, we propose to inquire whether a debt secured by bond, or bill single, comes within the principle which allows "a direct admission of a previous subsisting debt, which the party is liable and willing to pay," to remove the bar of the statute of limitations.

In respect to the English statute of the 21 Jac. 1 c. 16, it has

been holden, that though the statute says " that actions on the case, account, trespass, debt, detinue and replevin shall be brought within six years after the cause of action, and not after;" yet, in all these actions, except *assumpsit*, the six years commences from the moment there is a cause of action, and that time cannot be enlarged by any acknowledgment. [A'Court v. Cross, 3 Bing. Rep. 329.] But in *assumpsit* a promise to pay or such acknowledgment of indebtedness as warrants the implication of a promise, gives a right of action—such promise is sustained by the moral duty imposed, by the original liability. And in Tanner v. Smart, 6 Barn. & Cres. Rep. 603: the court speaking of the statute, 21 Jac. 1, say, that though the act places all actions of trespass, detinue, case, &c. on the same footing as to time, it is only in *assumpsit*, that an acknowledgment has been held to take from a defendant its protection. Lord Tenterden, Ch. J. remarks " when in the case of Hurst v. Parker, 1 B. & A. Rep. 92, it was decided to be inapplicable to actions of trespass, Lord Ellenborough gave what appears to be the true reason, that in *assumpsit* 'an acknowledgement of the debt is evidence of a fresh promise' and that promise is considered as one of the promises laid in the declaration, and one of the causes of action which the declaration states. If an acknowledgement had the effect which the cases in the plaintiffs favor attribute to it, one should have expected that the replication to a plea of the statute, would have pleaded the acknowledgement in terms, and relied upon it as a bar to the statute; whereas the constant replication ever since the statute, to let in evidence of an acknowledgment, is, that the causes of action accrued (or the defendant made the promise in the declaration) within six years; and the only principle upon which it can be held to be an answer to the statute is this, that an acknowledgment is evidence of a new promise, and as such constitutes a new cause of action, and supports and establishes the promises which the declaration states. Upon this principle, whenever the acknowledgment supports any of the promises in the declaration, the plaintiff succeeds; when it does not support them, (though it may shew clearly *that the debt has never been paid* but is still a subsisting

debt) the plaintiff fails." Again, after reviewing some of the earlier and later decisions of the English courts, upon the effect of an acknowledgment, the Lord Chief Justice continues, "all these cases proceed upon the principle, that under the ordinary issue on the statute of limitations, an acknowledgment is only evidence of a promise to pay; and unless it is conformable to, and maintains the promises in the declaration, though it may shew to demonstration that the debt has never been paid and is still subsisting, it has no effect."

By a provincial statute of Maryland, it is enacted, that no bill, bond, judgment, or recognizance, statute merchant or of the staple, or other specialty whatsoever, (except such as shall be taken in the name of, or for the use of our sovereign the King, &c.) shall be good and pleadable or admitted in evidence against any person of that (province) State, after the principal debtor and creditor have both been dead twelve years, or the debt or thing in action is above twelve years standing, 2 Bouvier's L. Dic. 55. Under this act it has been decided that the payment of interest upon a bond, would not have the effect to avoid its operation; " because," say the court, " the language of the statute of this State in the case of a bond is positive and peremptory that no bond shall be good and pleadable, or admitted in evidence, after the principal debtor and creditor have been both dead twelve years, or the debt, or the thing in action, above twelve years' standing, saving to the creditor the usual benefits or exceptions of infancy, &c." The court further remark: " It is also incontrovertibly established, that not even an express acknowledgment of the debt, will revive the remedy upon the bond when barred by the operation of the act." Carroll v. Waring et al. 3 Gill & John. Rep. 491.

A statute of New Jersey provides that " every action of debt, or covenant for rent, or arrearages of rent, founded upon a lease under seal; debt on any bill or obligation for the payment of money only, or upon any award under the hands and seals of arbitrators for the payment of money only, shall be commenced and sued within sixteen years next after the cause of such action shall have accrued and not after; but if any payment shall have

been made on any such lease, specialty, or award, within or after the said period of sixteen years, then an action instituted on such lease, specialty or award, within sixteen years after such payment, shall be effectual in law and not after." The section concludes with the usual saving in favor of infants, &c.

The construction of this act became necessary in Ludlow v. Van Camp, 2 Hals. Rep. 113. Among other counts in the plaintiffs declaration was one, which set out a bond, and charged that after the expiration of sixteen years from the date thereof (no money having been paid thereon) the defendant expressly undertook and promised to pay, &c. To this count there was a demurrer, which being sustained by the *common pleas*, the plaintiff brought a writ of error to the *Supreme Court*. *Kirkpatrick Ch. J.* in his opinion maintained, that the bar of the statute destroyed the legal and equitable obligation to pay the debt against which it had run, and consequently the law would not imply a promise of payment by the defendant; but although the liability to pay was at an end both at law and in equity, yet the moral duty was still binding *in foro conscientiæ*, and constituted a sufficient consideration for an *actual or express* promise. *Mr. Justice Ford* held, that the statute took away all remedy upon the bond itself, and that the promise laid, was insufficient to maintain the action. That the rule of law was clear, that every *indebitatus assumpsit* must state the *cause for which the debt accrued*, as for money *lent*, goods *sold and delivered*, or whatever was the cause of the debt. The count demurred to, set out that the defendant was indebted by bond, while a bond is only evidence of a debt, and not the cause or consideration. To say that the defendant was indebted *by bond* is no more a disclosure of the *consideration*, than to say he was indebted *by book*, therefore the count is defective in substance, and wholly insufficient to maintain an *assumpsit*. [Cowp. Rep. 128.] It was conceded that a bond imports a legal obligation to pay the amount stipulated, but as to the morality on which it is founded, it may be *moral* or it may be *immoral*, and the obligation *itself* is no proof of either. The learned judge concluded that a promise

to pay a bond debt, did not give a cause of action either upon the bond or the promise, and the majority of the court concurred with him in the opinion that the demurrer was rightfully sustained by the common pleas.

In *Connecticut*, the limitations of actions on specialties and promissory notes not negotiable, is seventeen years, with a saving in favor of persons legally incapable of bringing an action. In that State, it has been holden that a bond barred by the statute of limitations cannot be revived by an acknowledgment, or express promise to pay. Fuller v. Hancock, 1 Root's Rep.' 238; cited from 6 Am. Com. Law cases, 484. To the S. P. and cited from the same volume see Marston v. Seabury, 2 Penn. Rep. 435, 702. [ 𝑛. 5 ] 𝒫𝓇𝑜𝑜𝑓 ⸱⸱.

The statute of New Jersey bears a resemblance so striking to our own, as to leave but little doubt that our act was borrowed from that State. Neither of the acts recognize a *direct acknowledgment* or an *express promise,* as being sufficient to remove the bar of the statute, but expressly provide that a *payment within or after the period of sixteen years,* shall have that effect. Now may not the trite mixim *expressio unius exclusio est alterius* be appropriately applied? If the Legislature had intended that an acknowledgment, or an actual promise should avoid the operation of the statute, it would have been very easy to have so said, and as the Legislature seem to have considered what should deprive a party of its protection, and provided for one case, the conclusion is but reasonable, that it was not intended that any other state of facts should remove the bar.

The terms of the act of Maryland are very strong, in declaring that no bond. &c. shall be "good and pleadable or admitted in evidence" after the statute has run, yet the common sense meaning of our act, is quite as potent, in providing that *the action shall be brought within sixteen years after the cause of it shall have accrued, and not after.* True, if many of the decisions upon the statute of Jac. of 1, and other kindred enactments are to be regarded as correct exponents of the legis-

lative will, the terms of our act, cannot in point of force compare with those of the Maryland statute. But these decisions we have seen in many instances, have been overruled by the court which made them; and in England, where a long course of contradictory and almost unintelligible adjudications, had involved the law on this head in inextricable confusion, it was thought best to declare it by direct legislation. And this has accordingly been done by several statutes enacted in the 9th of Geo. the IV. See Wilkinson, on the statute of limitations, 157, *et post.*

It is perhaps worthy of remark, that our statute as well as that of New Jersey from which it was doubtless copied, was enacted long after many of the most objectionable decisions were made upon the statute of Jac. the 1st, and even after the English courts had expressed a dissatisfaction with their course of decision, and manifested a desire to retrace their steps and to return to the letter and spirit of the act. Such being the case, is it not more than possible that the Legislature intended to prevent a similar disregard of their will, by providing expressly the only case in which the remedy should be kept alive, after the limitation had run?

It is insisted for the plaintiffs, that the acknowledgment having been made before the statute had run, it shews that at the time of the acknowledgment there was a subsisting liability, and that the statute can only begin to run from this latter period. The view we have already taken of the act, is perhaps a sufficient answer to this argument. But it may be further added, that the statute of limitations " is a wise and beneficial law, not designed merely to raise a presumption of payment of a just debt, from lapse of time, but to afford security against stale demands after the true state of the transaction may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses. Bell v. Morrison *et al.* 1 Peter's Rep. 351. See also Moore v. The Bank of Columbus 6, Peter's Rep. 86.

That there are authorities which assert that the statement is founded on the presumption of payment cannot be denied, but the opposite authorities are sustained by the current of decision

at this day, as more consonant to legal rules. · Tanner v. Smart 6 Barn. & Cres. Rep, 603; A. Court v. Cross, 3 Bing. Rep. 329. But it is. needless to multiply authority to this point, since it is clear that the recent adjudications. with scarcely an exception in regard to acknowledgments, proceed upon the idea that the law is as we have stated it. The argument being founded upon the idea that the statute *only* presumes a payment from the length of time, and the reverse being the law, it is unnecessary further to consider it.

In determining the question before us, we can derive but little aid from the English authorities. There, specialties are not embraced by the statute of limitations, and the common law merely presumes a payment from the staleness of the demand; consequently, every acknowledgment which counteracts that presumption is admissible in evidence.

It has been argued for the plaintiff, that if an acknowledgment will not revive the remedy upon a bond, it will not avoid the bar when sought to be set up against a promissory note, bill of exchange, or other parol contract; that the statute applicable to each case, must receive a similar construction. Without attempting an exposition of the act so far as it relates to promissory notes, &c., it is sufficient to remark that the Legislature in declaring its will in respect to the limitation of actions, have used different terms as applying to bonds, from those employed in regard to promissory notes, &c. See Aik. Dig. 270.

The view we have taken, is decisive of the case, and it remains only to declare, that the decree of the court of chancery must be affirmed with costs.