## PHILLIP BIDDEL v. BARTOLO BRIZZOLARA.

STATUTE OF LIMITATIONS—NEW PROMISE.—The purpose of § 360 of the Code of Civil Procedure is to establish a rule, not with respect to the character of the promise or acknowledgment from which a promise may be inferred, but with respect to the kind of *evidence* by which the promise or acknowledgment shall be proved.

ID.—ID.—The writing, relied on as evidence of a new promise, must contain an express promise, or an acknowledgment of the debt as an existing debt, from which a present promise may be inferred.

ID.—FINDINGS.—Inasmuch as the Code permits the statute to be pleaded by a reference to the section, a finding as a fact that the action was barred by a certain section of the Code might be sufficient.

FINDINGS.—A finding should be of an ultimate fact, or of such probative facts as that the ultimate fact necessarily results from them.

STATUTE OF LIMITATIONS — NEW PROMISE — MORTGAGE.— A mortgagor executed a written contract for the sale of the mortgaged premises to R., wherein R., as part of the consideration, assumed the mortgage; *held*, that the recital or promise of R., contained in the agreement, did not conclusively establish a new promise on the part of the mortgagor to pay, so as to relieve the bar of the statute.

APPEAL from a judgment in favor of the plaintiff, in the Superior Court of the County of San Luis Obispo.   McMURTRY, J.

The facts are stated in the opinion.

After the decision in Department, the respondent filed his petition that the appeal be reheard in Bank, and the application was denied.

*W. J. & William Graves, J. M. Wilcoxon,* and *Ernest Graves,* for Appellant.

The acknowledgment should be a direct and unqualified admission of a present subsisting debt, on which the party is liable, and which he is willing to pay.   A mere reference to the indebtedness, or some suggestion of some action concerning it, is not sufficient.   Neither is it sufficient that there is an offer to pay the debt in a particular manner, or upon specified conditions, unless those are fulfilled.   (Code Civ. Proc. § 337, 360; *Farrell* v. *Palmer*, 36 Cal. 187; *McCormick* v. *Brown*, id. 180; *Bell* v. *Morrison*, 1 Pet. 351; *Sands* v. *Gelston*, 15 Johns. 511; *Jones* v. *Moore*, 5 Binn. 573; *Borghaus* v. *Calhoun*, 6 Watts, 219; *DeForrest* v. *Heunt*, 8 Conn. 185; *Russell* v. *Cop*, 5

N. II. 154; *Harrison* v. *Handly*, 1 Bibb. 443; *Bell* v. *Rowland*, 1 Hardin, 301; Aug. on Lims. § 331, and note; *Silent* v. *Wilder*, 16 Kan. 176; *Hanson* v. *Towle*, vol. 6, "The Reporter," 140; *McClellan* v. *West*, 59 Penna. St. 407; *Wilcox* v. *Williams*, 5 Nev. 206; *Taylor* v. *Hendrie*, 8 Nev. 243; *Kyle* v. *Wells*, 17 Penna. St. 286; *Roscoe* v. *Hale*, 7 Gray, 274; *Stoddart* v. *Doane*, id. 387; *Richardson* v. *Thomas*, 13 Gray, 381; *Pearson* v. *Darrington*, 32 Ala. 227; *Robbins* v. *Farley*, 2 Strob. 348; *Frammel* v. *Salmon*, 2 Bail. 308; *Norton* v. *Colby*, 52 Ill. 198; *Carroll* v. *Forsythe*, 69 id. 127; *Wacher* v. *Albee*, 80 id. 47; *McGrew* v. *Forsythe*, id. 596.)

*McD. R. Venable*, and *Craig & Meredith*, for Respondent.

In *Williamson* v. *Nagle*, 3 Younge & C. 210, it was held, that a devise to pay certain debts, plaintiff's being one, was a sufficient acknowledgment to relieve the statute, and to enable the plaintiff to resort to the general estate. In *Stanford* v. *Andrews*, 12 Heisk. 664, it was held, that a barred debt will be revived by a provision for it in a trust deed. In *ex parte Ferguson*, 17 La. An. 255, upon facts identical with the one at bar, it was held that the statute was relieved. In *Palmer* v. *Butler*, 36 Iowa, 576, it was held, that a recital in a mortgage, that it is made subject to a prior one executed by the mortgagor, in favor of another mortgagee, relieves the statute. See also *Dinguid* v. *Schoofield*, 32 Gratt. 810; Smith's Lead. Cases, 7th Am. ed. 963, 976; *Barron* v. *Kennedy*, 17 Cal. 574; *Crawford* v. *Edwards*, 33 Mich. 354.

McKINSTRY, J.:

The Court below filed the following "Findings of Fact and Conclusions of Law":

"1. That on the 25th day of June, 1874, at the county of San Luis Obispo, the defendant, Bartolo Brizzolara, executed and delivered to the plaintiff his promissory note in writing, whereby, for value received, he promised to pay to the plaintiff one year after the date of said note the sum of $6,000, with interest thereon at the rate of one and one-quarter per cent. per month, from the date of said note until paid, said interest to be

paid at the end of every three months from the date of said note, and if not so paid to be compounded quarterly; and also promised to pay the said principal sum and interest in the gold coin of the United States, which said promissory note is in the words and figures following, to wit:

" ' $6,000.                SAN LUIS OBISPO, June 25th, 1874.

" ' One year after date, without grace, I promise to pay to Phillip Biddel or order, the sum of six thousand dollars, payable only in gold coin of the United States, for value received, with interest thereon in like coin at the rate of one and one-quarter per cent. per month from date until paid, said interest to be paid at the end of every three months from the date hereof, and if not so paid to be compounded quarterly.

" ' (Signed)                BLO. BRIZZOLARA.'

" 2. That on the said day, to secure the payment of the said note, the said defendant, Bartolo Brizzolara, executed and duly acknowledged, so to entitle the same to be recorded, and delivered to the plaintiff, his certain indenture of mortgage, whereby, for a good and valuable consideration, he granted, bargained, sold, and mortgaged to the plaintiff all of that certain lot, piece, or parcel of land lying and being situate in the town (now city) of San Luis Obispo, County of San Luis Obispo, State of California, and more particularly bounded and described as follows, to wit: "

[Here follows a description of the mortgaged premises, and an allegation that the mortgage was duly recorded on the day of the date thereof.]

" 3. That the interest upon the said promissory note was paid to the 25th day of June, 1879. That no part of the principal sum of said note was ever paid, and that the whole of the principal sum of said note, together with interest thereon, at the rate of one and one-quarter per cent. per month from the said 25th day of June, 1879, compounded quarterly at the same rate, from the said date, is due and payable from the said defendant Bartolo Brizzolara, to the plaintiff.

" 4. That afterwards, on the 22nd day of October, 1878, the defendant Bartolo Brizzolara, and one Austin Roberts, entered into, made, executed, and each of them duly acknowledged, an agreement in writing in the words and figures following, to wit:

" ' This agreement, made this 22nd day of October, A. D. 1878, between Bartolo Brizzolara, of San Luis Obispo, State of California, the party of the first part, and Austin Roberts, of the County of Santa Clara, the party of the second part, witnesseth: That the party of the first part has this day sold to the party of the second part, all of the real property owned by him fronting on Monterey street, in the City of San Luis Obispo, County of San Luis Obispo, State aforesaid, and extending from Rose Alley to Chorro street, and extending back to San Luis Obispo creek, which property is particularly described in a deed this day made by the party of the first part to the party of the second part, and delivered to the Bank of San Luis Obispo, in escrow, to be delivered to the party of the second part, as herein after provided.

" ' That the consideration of said sale is as follows: Eleven thousand dollars, in gold coin, to be paid as follows: The party of the second part assumes a mortgage now on said property, held by Phillip Biddel, principal and interest amounting to $6,090, and assumes to pay the county and State taxes on said property for the current year, amounting to $136; and this day pays to the party of the first part the sum of $1,000 in cash, the receipt whereof is hereby acknowledged by the party of the first part; and the balance of said purchase money, $3,774.50, is secured to be paid by a promissory note of this date, payable on the 5th day of November, 1878.

" ' Now, it is agreed that when the said note is paid, then that the said bank shall deliver the said deed, held by it in escrow as aforesaid, to the said party of the second part, and the said bank is hereby instructed to so deliver said deed whenever said note is paid.

" ' It is understood and agreed, that the rents for the current month up to the first day of November, 1878, shall belong to the party of the first part, and all rents accruing after the first day of November, 1878, shall belong to the party of the second part. And it is further agreed, that the party of the first part will pay the taxes assessed against the said property, by the city of San Luis Obispo, before said note is paid, and if he fail to pay the same, then the amount of said city tax shall be deducted from the amount of said note on the day the same is paid.   In

witness whereof the parties hereto have hereunto set their hands
and seals the day and year first above written.

"'BARTOLO BRIZZOLARA,

"'AUSTIN ROBERTS.

"'Witness:  McD. R. VENABLE.'"

[Here the Court finds an acknowledgment in proper form and
that agreement was duly recorded.]

" 5.  Roberts, who was a party to the agreement with Brizzo-
lara set out in the last preceding finding, never paid plaintiff any-
thing upon the mortgage alluded to therein, and on the 16th of
December, 1878, made, executed, acknowledged, and delivered
to Brizzolara, and the latter accepted, a certain deed in the
words and figures following: "

[Setting out the instrument purporting to remise, release,
and quit claim to Bartolo the same premises described in the
mortgage and agreement, followed by an averment that it was
duly acknowledged and recorded.]

"6.  That on the 3rd day of July, 1879, the defendant Bar-
tolo Brizzolara was the owner of the real property described in
the complaint herein, and on that day became and was indebted
to the defendant Santiago Brizzolara in the sum of $4,400.52 in
United States gold coin, to secure which amount he on said day
made his certain promissory note, and delivered the same to
said defendant Santiago, in the words and figures following, to
wit :

"'$4,240.52.          SAN LUIS OBISPO, July 3rd, 1879.

"'On or before the 1st day of December, 1879, I promise to pay
to Santiago Brizzolara, or order, the sum of $4,240.52, in United
States gold coin, with interest thereon at the rate of one per
cent. per month from date, for value received.

"'BARTOLO BRIZZOLARA.'

" And as a further security for said money, and as security
for the payment of said promissory note in accordance with the
terms thereof, the said defendant, Bartolo Brizzolara, by his
certain deed of mortgage bearing even date and delivered to this
defendant at the same time with said note, mortgaged to this de-
fendant the real property described in said complaint, and every
part and parcel thereof, which said mortgage is in the words
and figures following : "

[The mortgage last mentioned, at length, with a statement that it was duly acknowledged by Bartolo and recorded.]

" 7. That the money secured to be paid by said defendant Bartolo Brizzolara, to this defendant by said note and mortgage, or any part thereof, has never been paid, and the whole thereof, with interest as stipulated therein, is due and owing from said defendant Bartolo Brizzolara, to the defendant Santiago Brizzolara, and the defendant is, and at all times since the making and delivery of said note and mortgage to him, on the 3rd day of July, 1879, has been, the owner and holder of said note and mortgage, and the said mortgage, ever since its said date, has been and is a subsisting lien upon the real property described in plaintiff's complaint herein.

" 8. Both the defendants Santiago Brizzolara and Austin Roberts had notice of the said promissory note and mortgage to plaintiff before they, or either of them, acquired any estate or interest in the real property described in said mortgage to plaintiff, or any part thereof, if they or either of them ever, in fact, acquired any such estate or interest.

" 9. That no other or different contract, agreement, covenant, or acknowledgment was ever made between Bartolo Brizzolara and Biddel, or between said Bartolo and Roberts, or between said Roberts and Biddel, or between said Bartolo and Roberts and Biddel, than is herein before found, set out, and stated.

" 10. That the sum of $500 is a reasonable attorney's fee for the services of plaintiff's attorneys herein, in foreclosing plaintiff's said mortgage."

" Conclusions of law.—Upon the foregoing facts the Court is of opinion :

" 1. That the plea of the Statute of Limitations, interposed by both of the defendants Bartolo and Santiago Brizzolara, is not well taken ; that the agreement in writing between Bartolo Brizzolara and Austin Roberts, of the 22nd of October, 1878, contained a sufficient acknowledgment on the part of Bartolo Brizzolara, within § 360 of the Code of Civil Procedure, to take the case out of the operation of part ii, title ii, of said Code, and that this acknowledgment renewed and extended the said mortgage of plaintiff so as to continue the lien thereof as against the defendant Bartolo Brizzolara, as well as against the lien of the mort-

gage of Santiago Brizzolara. This results, notwithstanding the stipulation in the deed back from Roberts to Bartolo Brizzolara, stating that the intention of that instrument was to set aside, annul, and make void the said agreement of October 22nd, 1878, between Bartolo and Roberts.

" 2. That the plaintiff is of right entitled to have his mortgage foreclosed," etc.

Mr. Angell, in his exhaustive treatise on " Limitations of Actions," after fully considering the English cases, and those decided in many of the States of the United States, declares : " The law, then, as now fully established both in England and in this country, clearly is : 1. That a debt barred by the Statute of Limitations may be revived by a new promise. 2. That such new promise may either be an express promise or an implied one. 3. That the latter is created by a clear and unqualified acknowledgment of the debt. 4. That if the acknowledgment be accompanied by such qualifying expressions or circumstances as repel the idea of an intention or contract to pay, no implied promise is created. The point to be resolved in all cases is, whether the acknowledgment or promise is a mere continuation of the original promise grounded upon presumption of payment, or whether it is a *new* contract springing out of and supported by the original consideration ; it clearly appears, both upon principle and authority, that it is the latter, and the decisions of all the courts throughout the country are remarkably uniform in so establishing it." (Angell on Limitations, 232.)

We think that § 360 of the Code of Civil Procedure does not establish a different rule in this State. The purpose of that section is to establish a rule, not with respect to the character of the promise or acknowledgment from which a promise may be inferred, but with respect to the kind of *evidence* by which the promise or acknowledgment shall be proved. Like Lord Tenderden's Act (9 Geo. iv, c. 13, cited in Bacon's Abr. title, Limitations of Actions), it provides that no such promise or acknowledgment shall be deemed sufficient evidence of a new or continuing contract, whereby to take a case out of the operation of the statute, unless the same be in writing signed by the party to be charged thereby. The English rule had been so far modified as to require that the acknowledgment should be such

as to constitute evidence of a new promise *before* the Tenderden Act, *and such has been the law in England since.* It was not suspected by the English courts that the act established the proposition that a mere acknowledgment that the debt once existed should be sufficient. It was said by Tindal, C. J., in *Hayden* v. *Williams,* 7 Bing. 163, that the Tenderden Act did not intend to make any alteration in the legal construction to be put upon acknowledgments or promises made by defendants, but only to require a different mode of proof. Our statute does not purport to adopt either of the adverse principles referred to by Mr. Angell; that is, that the acknowledgment removes a presumption of *payment,* or that it is evidence of a *new* promise for which the consideration is moral simply, though springing out of the original consideration. It is a simple enactment, that whatever the intent of the statute—whether it provides for a new or a continuation of the old promise—the promise, or proof of the promise, must be in writing, signed, etc.

The writing, therefore, must contain an express promise or an acknowledgment of the debt as an existing debt, from which a present promise may be inferred.

Section 458 of the Code of Civil Procedure authorizes the Statute of Limitations to be pleaded by reference to the section of the Code relied upon, and an averment that the action is barred by that section. But the legal effect is the same as the plea *non assumpsit infra sex annos,* to which the reply was *assumpsit infra sex annos.* In such case, as was said by Chief Justice Tilgham in *Jones* v. *Moore,* 5 Binn. 573, "How can the issue be found for the plaintiff without proof of a promise express or implied, within the six years?"

Under our practice, a "finding" should be of an ultimate fact, or of such probative facts as that the ultimate fact necessarily results from them. (*Coveny* v. *Hale,* 49 Cal. 552.) In reference to the Statute of Limitations, inasmuch as the section of the Code of Civil Procedure permits the statute to be so pleaded, a finding as a *fact,* that the action was barred by a certain section of the Code, might be sufficient. It is certain that a finding of a promise in writing to pay would be sufficient; but where, as in the case before us, the finding is of a writing containing an *acknowledgment,* the finding is not sufficient unless the acknowl-

edgment necessarily establishes the promise. It is merely evidence tending to prove a promise; the finding of the evidence is not a good finding.

To uphold the judgment of the Court below, therefore, we must decide that the instrument in writing, introduced in evidence and found, contained an acknowledgment from which the law *implies* a promise to pay.

The portion of the agreement of October 22nd, 1878, which is claimed to constitute an acknowledgment such as necessarily creates the implication of a new promise, reads: " The party of the second part (Austin Roberts) assumes a mortgage now on said property held by Phillip Biddel, principal and interest amounting to $6,090." That this is a promise on the part of Roberts to pay off the mortgage, although made only to Bartolo Brizzolara, hardly accords with the notion that the latter—who had secured the promise from the former—intended to pay off the mortgage himself. The promise to assume the mortgage was part of the consideration for the transfer of the equity of redemption from Bartolo Brizzolara to Roberts. By such transfer, the former paid the latter to assume the mortgage. How can the covenant of Roberts to pay the debt be treated as evidence of a promise on the part of Bartolo to pay it?

The " acknowledgment" must be a direct and unqualified admission of an existing debt which the party is *willing to pay.* (*McCormick* v. *Brown*, 36 Cal. 180; *Farrell* v. *Palmer*, id. 187.)

" If there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such an acknowledgment ought to contain an unqualified and direct admission of a previous subsisting debt, which the party is liable and willing to pay. If their be *accompanying circumstances* which *repel* the promise or intention to pay ; if the expressions be equivocal, vague, and indeterminate, leading to no certain conclusion, but at best to probable inferences, which may affect different minds in different ways, we think they ought not to go to a jury as evidence of a new promise to revive the cause of action." (Mr. Justice Story, in *Bell* v. *Morrison*, 1 Pet. 362.)

In the case before us, the evidence does not show an intention

on the part of the mortgagor to pay the debt to the creditor—the debt secured by mortgage—but the agreement provides for the payment by another person.

Certainly—and that is the only point indispensably involved in the determination of this appeal—the recital, or promise of *Roberts*, contained in the agreement, does not conclusively establish a promise on the part of Bartolo Brizzolara to pay the claim secured by the mortgage. It cannot be said that the "*ultimate* fact," the *promise*, necessarily results from the "probative fact," the acknowledgment, such as it is, so as to bring the case within the rule laid down in *Coveny* v. *Hale, supra.*

Judgment reversed, and cause remanded for a new trial.

Ross, J., and McKee, J., concurred.